No. 95-043

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

    Plaintiff and Respondent,

    v.

FRANK MICHAEL GREY,

    Defendant and Appellant.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    David M. Ortley, Kalispell, Montana

    For Respondent:

    Joseph P. Mazurek, Attorney General, Jennifer
Anders, Assistant Attorney General, Helena, Montana;
Thomas J. Esch, Flathead County Attorney, Valerie
D. Wilson, Deputy Flathead County Attorney,
Kalispell, Montana

FILED

DEC 05 1995

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: August 31, 1995

Decided: December 5, 1995

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Defendant Frank Michael Grey (Grey) appeals from the Eleventh Judicial District Court, Flathead County's order denying his motion to suppress his videotaped statement and judgment of conviction. We reverse.

We find the following issue dispositive:

Whether the District Court erred in denying Grey's motion to suppress his videotaped statement on the ground that the statement was obtained involuntarily and thus in violation of Grey's Fifth Amendment right against self-incrimination?

BACKGROUND

John Zauner (Zauner) owns a Western Auto store in Kalispell, Montana where Grey was employed as a salesclerk. After noting merchandise missing from his store, and after finding that Grey had a prior conviction of theft from a store at which he worked, Zauner contacted the Kalispell Police Department. The police initiated an investigation focused on Grey. The thefts occurred after Zauner hired Grey and some could be traced to Grey's shift. Additionally, Zauner saw the same kind of radar detector mount that was missing from his store in Grey's pick-up truck and knew that Grey always carried a gym bag to and from work. The police placed a video camera in the store to "make it look as if there was a hidden camera."

The police contacted Grey at Western Auto, informed him that an investigation was being conducted, and told him that all the employees would be interviewed, but he was the first. The police asked Grey to go to the Kalispell Police Department for the interview. Grey voluntarily drove himself to the station and was

2

initially interviewed in the public area of the station. Officer Holt told Grey that he was investigating a theft totalling $22,000 and again told Grey that he would interview each employee. Officer Holt used the "Reed" technique of interviewing to interpret Grey's responses and body mannerisms to determine whether he was more likely guilty than not.

At that point, Officer Holt contends that he gave Grey his Miranda warnings, asked him if he wanted to continue talking, and took him to the booking room for formal interrogation. Grey contends that Officer Holt did not give him his Miranda warnings. The police did not obtain a written waiver or record giving Grey his Miranda warnings, but did videotape the interview. Officer Holt began the interrogation by again telling Grey that approximately $20,000 was missing from Western Auto and asking Grey whether the lie detector would "go beep" when he answered questions. During the interrogation, Grey confessed to taking merchandise from Western Auto. Both parties agree that the interview constituted a custodial interrogation.

The police arrested and incarcerated Grey. Grey filed a pre-trial motion to suppress the statement and videotape alleging that they were both obtained in violation of his privilege against self-incrimination. On September 19, 1994, the District Court denied Grey's motion to suppress. On the date scheduled for trial, the District Court heard Grey's renewed motion to suppress, denied the motion, and granted Grey's oral motion to continue trial. Following a bench trial, the District Court found Grey guilty of

3

felony theft, common scheme, and ordered him to serve 90 days in the Flathead County jail and deferred his sentence for 2 years on certain conditions.

## DISCUSSION

Whether the District Court erred in denying Grey's motion to suppress his videotaped statement on the ground that the statement was obtained involuntarily and thus in violation of Grey's Fifth Amendment right against self-incrimination?

On appeal, Grey raises five issues for our consideration. Since we reverse the District Court on the second issue, we will only discuss that issue. We review a district court's findings of fact regarding suppression hearing evidence to determine whether those findings are clearly erroneous. State v. Kaluza (1993), 262 Mont. 360, 361, 865 P.2d 263, 264 (citing State v. Bower (1992), 254 Mont. 1, 7, 833 P.2d 1106, 1110 and State v. Cope (1991), 250 Mont. 387, 396, 819 P.2d 1280, 1286). The issue of voluntariness is largely a factual determination that is within the discretion of the district court. State v. Lenon (1977), 174 Mont. 264, 271, 570 P.2d 901, 906.

Grey argues that the police used impermissible procedures to obtain his confession, rendering it involuntary and violative of both his Fifth Amendment privilege against self-incrimination and his Fourteenth Amendment right to due process of the law. Grey also contends that the police did not administer adequate Miranda warnings and should have recorded the warnings and obtained a written waiver. Grey claims that he did not voluntarily,

4

intelligently, and knowingly waive his rights. Therefore, he contends that the District Court erred in admitting his statement into evidence.

Confessions are generally admissible. To be admissible, however, a confession must be made freely, voluntarily, and without compulsion of any sort. State v. Allies (1979), 186 Mont. 99, 109, 606 P.2d 1043, 1049.

> The abhorrence of society to the use of involuntary confessions does not turn alone on their inherent untrustworthiness. It also turns on the deep-rooted feeling that the police must obey the law while enforcing the law; that in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves.

Allies, 606 P.2d at 1047 (quoting Spano v. New York (1959), 360 U.S. 315, 320, 79 S.Ct. 1202, 1205, 3 L.Ed.2d 1265, 1270).

The procurement of a confession must comport with the guarantee that an individual will not be compelled to incriminate himself or herself, and that the individual may not be convicted of a crime without due process of law. Allies, 606 P.2d at 1047. It follows that "[i]f a defendant's confession is involuntary, it violates [the] Fifth Amendment privilege against self-incrimination and may not be used as evidence at [the] criminal trial without violating [the] Fourteenth Amendment right to due process of the law." Lenon, 570 P.2d at 906 (citing Brown v. Mississippi (1936), 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682). A defendant may waive the Fifth and Fourteenth Amendment rights only if the waiver of those rights is made voluntarily, knowingly, and intelligently. Miranda v. Arizona (1966), 384 U.S. 436, 444, 86 S.Ct. 1602, 1613,

5

16 L.Ed.2d 694, 707; State v. Blakney (1982), 197 Mont. 131, 134, 641 P.2d 1045, 1049.

Voluntariness is the underlying test of admissibility of confessions. Lenon, 570 P.2d at 906 (citing Brown v. Illinois (1975), 422 U.S. 590, 604, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416, 427).

> Voluntariness has reflected an accommodation of the complex values implicated in police questioning of a suspect . . . At one end of the spectrum is the acknowledged need for police questioning as a tool for the effective enforcement of criminal laws . . . At the other end of the spectrum is the set of values reflecting society's deeply felt belief that the criminal law cannot be used as an instrument of unfairness . . . [Citations omitted.]

Schnekloth v. Bustamonte (1973), 412 U.S. 218, 225-26, 93 S.Ct. 2041, 2046, 36 L.Ed.2d 854, 861. In determining whether a defendant's confession was voluntary, the United States Supreme Court has assessed the totality of all the surrounding circumstances, including the characteristics of the accused and the details of the interrogation. Schnekloth, 412 U.S. at 226. Significantly, none of the decisions regarding the admissibility of a confession turns on the presence or absence of a single controlling criterion, each reflects a careful scrutiny of all the surrounding circumstances. Schnekloth, 412 U.S. at 226. Accordingly, this Court has held that an analysis of the voluntariness of a confession is a factual question that must take into account the totality of the circumstances. State v. Mayes (1992), 251 Mont. 358, 376, 825 P.2d 1196, 1208 (citing Allies, 606 P.2d at 1050).

6

Pursuant to § 46-13-301(1), MCA, a defendant may move to suppress a confession that the defendant feels was involuntary. This section places the burden on the State to prove by a preponderance of the evidence that the confession was voluntary. The central question is whether the State has established by a preponderance of the evidence that the defendant was advised of his constitutional rights and whether that defendant knowingly waived them and voluntarily gave a statement. State v. Blakney (1982), 197 Mont. 131, 143, 641 P.2d 1045, 1051.

Several factors can culminate in a totality of circumstances that render a confession involuntary. A confession extracted by any sort of threat or violence, by any direct or implied promises, however slight, or by the exertion of any improper influence has the potential to be involuntary. State v. Phelps (1985), 215 Mont. 217, 224, 696 P.2d 447, 451. Physical coercion, psychological coercion, inadequate Miranda warnings, and impermissible police practices are each factors weighed in a court's consideration of undue influence. Brown v. Mississippi, 297 U.S. 278 (holding that physical brutality led to an involuntary confession); Payne v. Arkansas (1958), 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (holding that mental coercion led to an involuntary confession); Miranda, 384 U.S. 436 (holding that failure to warn defendant of rights rendered confession inadmissible); Allies, 606 P.2d 1043 (holding that impermissible police procedures rendered confession involuntary). In the instant case, the police followed impermissible practices and failed to administer adequate Miranda

7

warnings.

When a defendant moves to suppress a statement, the district court's analysis should focus on whether the law enforcement authorities followed impermissible procedures. Allies, 606 P.2d at 1049; State v. Grimestad (1979), 183 Mont. 29, 36, 598 P.2d 198, 202. For example, in Allies, the defendant voluntarily presented himself at the police station three times, underwent a polygraph test, and eventually confessed to four murders. The police used two impermissible procedures in Allies; they lied to the defendant and used subtle psychological pressure. Even though the police advised the defendant of his Miranda rights, we held that in considering the totality of the circumstances, the State did not, by a preponderance of the evidence, show that the defendant voluntarily and knowingly waived his constitutional right against self-incrimination or that he voluntarily confessed.

In Mayes, a defendant found guilty of incest confessed after taking a polygraph test. Mayes, 825 P.2d 1196. This Court suppressed the confession because the combination of the circumstances surrounding his confession mandated suppression. At the time the defendant confessed, he had been awake for more than 30 hours, questioned continually, separated from his children, and lied to about evidence against him. Mayes, 825 P.2d at 1208. The polygraph test indicated that the defendant was not telling the truth, and the examiner used that information to obtain a confession.

In State v. Craig (1993), 262 Mont. 240, 864 P.2d 1240, the

8

defendant had slept prior to the exam and the officers did not lie about evidence, however we still held that the district court did not err in suppressing a statement made by the defendant following a polygraph examination where police officers used the results of the polygraph to elicit a statement or confession. We reached that result even though at no time did the police make any false statements to the defendant in order to induce a confession. Craig, 864 P.2d at 1243 (Nelson, J., dissenting).

In the instant case, the police made false statements in order to induce Grey's confession and thus clearly used impermissible procedures. The Kalispell Police Department's investigation singled out Grey and focused on obtaining enough evidence to charge him. They lied to him and told him that they were going to interview each employee. They lied to him about the extent of the theft problem. They lied to him that $22,000 worth of merchandise had been stolen, when in fact, only several hundred dollars worth of property was missing. They set up a video camera in the store purely to create a false impression that the store was monitored. Lastly, they told Grey that the lie detector test would go "beep" if Grey did not tell the truth, when in fact Grey did not have to take a lie detector test. In summary, Officer Holt's use of deception to obtain Grey's confession was not a permissible police procedure.

The police committed an additional transgression of procedure in this case by not giving Grey adequate Miranda warnings. In State v. Johnson (1978), 177 Mont. 182, 580 P.2d 1387, we held that

9

the requirements of Miranda were not met when a county attorney testified that the defendant was given his rights but there was no proof regarding what the defendant was told about his rights. We concluded that without knowing what the defendant was told, we could not possibly determine if the defendant was properly advised of his rights prior to making a statement to the county attorney.

> This Court has said that where the police investigation has focused on a particular suspect who is held in police custody, law enforcement officers must adopt effective safeguards securing the suspect's constitutional right against self-incrimination prior to questioning him. . .

Johnson, 580 P.2d at 1389.

Moreover, a valid waiver will not be presumed simply from the silence of the accused after a warning is given or simply from the fact that a confession was in fact eventually obtained. The evidence must show the defendant intelligently understood his or her rights and rejected them. Miranda, 384 U.S. at 475. In Allies, we noted that the defendant was advised of his Miranda rights before he confessed. However, we proceeded with the understanding that "[m]ore than mere lip service must be given to Miranda and the principles it embodies." Allies, 606 P.2d at 1050.

Similarly, in Grimestad, the State appealed the district court's order granting defendant's motion to suppress evidence on the grounds that certain admissions were not voluntary. The police downplayed defendant's Miranda rights and persisted in assuring the defendant that he was not a suspect. In Grimestad, we agreed with the district court that "mere lip service was given to the Miranda requirements . . . rather than a meaningful warning." Grimestad,

10

598 P.2d at 203.

Similarly, in the instant case, the police gave mere lip service to the <u>Miranda</u> requirements. The officer who interrogated Grey testified that he gave Grey his <u>Miranda</u> rights before taking Grey to the interrogation room. However, he did not recall exactly what he told Grey, merely that he had recited the <u>Miranda</u> requirements from memory. The officer did, however, remember that he chose not to use a waiver form because he did not want to jeopardize the interrogation. He further testified that although Grey did not specifically say so, by agreeing to continue to talk with the police officers, Grey agreed to waive his rights.

The State simply did not prove by a preponderance of the evidence that Grey voluntarily confessed. It is immeasurably more difficult for the State to sustain its burden to prove the voluntariness of a confession when there is no record of the <u>Miranda</u> warnings other than the officer's testimony that he gave them.

We do not hold that the police must tape record or create an audio-visual record of <u>Miranda</u> warnings and the detainee's waiver, as Grey urges we should and as some jurisdictions have. <u>See</u>, for example, Stephan v. State (Alaska 1985), 711 P.2d 1156 and State v. Scales (Minn. 1994), 518 N.W.2d 587. Although that may be the better practice and would help assure that the accused receives a constitutionally adequate <u>Miranda</u> warning while, at the same time, enhancing the prosecution's ability to meet its burden to prove voluntariness, we leave the imposition of any such procedural

11

requirement to the legislature and to individual law enforcement agencies. Similarly, we do not hold that in every instance the failure to secure a written Miranda waiver will be fatal. We recognize, as one example, that an officer Mirandizing a suspect in the field at the time of arrest, may not be able to preserve a tangible record of his or her giving of the warning or of the accused's waiver.

Nevertheless, the situation in the instant case does not involve the arresting officer's administration of the Miranda warning in the field. We do hold, that, in the context of a custodial interrogation conducted at the station house or under other similarly controlled circumstances, the failure of the police officer to preserve some tangible record of his or her giving of the Miranda warning and the knowing, intelligent waiver by the detainee will be viewed with distrust in the judicial assessment of voluntariness under the totality of circumstances surrounding the confession or admission. That is all the more so where the evidence demonstrates that, as here, the police officer made a conscious decision not to secure a written waiver or otherwise preserve his giving of the Miranda warning and the detainee's waiver on the premise that to do so would alert the accused to exercise his rights and, thus, jeopardize the interrogation.

In the instant case, assuming, arguendo, that the warning was given, the mere perfunctory reading of Grey's Miranda rights was not sufficient; the police, here, made a pretense of advising Grey of his rights while simultaneously making sure he did not assert

12

them.  Such a procedure renders the giving of the <u>Miranda</u> warnings a hollow and meaningless exercise, indeed, and does not comport with due process.

Based on the totality of the circumstances of police deception and failure to give Grey an adequate <u>Miranda</u> warning, we hold that the District Court's findings were clearly erroneous.  The District Court misapprehended the evidence in finding that Grey's confession was voluntary.

Accordingly, Grey's conviction is reversed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

13