JUSTICE TRIEWEILER
specially concurring.
I concur with the result of the majority opinion for two reasons. First, the interrogation of Walter Cassell was done prior to the issuance of our decision in State v. Grey (1995), 274 Mont. 206, 907 P.2d 951. Second, even the Grey decision did not require that Miranda advice be tape recorded. However, I see no reason why Miranda warnings and a suspect’s consent to interrogation should not be recorded when the means to so do are readily availáble, and therefore, write separately to indicate that, in the future, I would require either a written waiver of a defendant’s right to remain silent, or a record of the Miranda advice that was given to that person and his or her response.
In this case, Cassell was interviewed on three separate occasions. Portions of two interviews were recorded, including his incriminating statements. However, for some reason, when he was advised of his rights pursuant to the Fifth Amendment to the United States Constitution during the first interview, and when he was reminded of those rights during the second interview, the recorder had not been turned on. Therefore, there is no record that Cassell was informed of his rights, and there is no record that he waived those rights.
The investigating officers contend that Cassell was advised of his rights and did waive them, but that that part of the conversation was not recorded because during that time they were establishing rapport with the suspect. Cassell denies that he was given any warning, and denies that he waived his rights. The trial court, and this Court on review, are required to speculate about what actually transpired, based on the relative credibility of the witnesses to the conversation. It is no secret that law enforcement will nearly always win that contest. Therefore, they have no incentive to record that part of the conversation, and it follows, they have little incentive to actually give the required advice.
On the other hand, assuming the advice was given, that it was understood, and that the rights were waived, why not record the conversation and avoid the inevitable challenge to the admission of confession? That simple practice would have saved time for the prosecuting attorney, the defense attorney, the trial court, and this Court because it would have established with certainty that Cassell’s statement was either voluntary or that it should be suppressed, in *405 compliance with the Constitution, as applied in Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1062, 16 L.Ed.2d 694.
The majority correctly concludes that when a defendant moves to suppress a confession or admission on the basis that it was involuntary, the State has the burden to prove, by a preponderance of the evidence, that the confession or admission was voluntary. Section 46-13-301(2), MCA. The majority then notes that the voluntariness of a confession is largely a factual question which must be resolved by taking into account the totality of the circumstances surrounding the confession, and lists six factors to be considered. Three of those six factors include: (1) the interrogation technique used by the police; (2) whether the defendant was advised of his or her Miranda rights; and (3) the defendant’s demeanor and capacity to make full use of his or her faculties. The problem is that, in this case, as in Grey, we have no direct knowledge of any of those three factors. The trial court, and this Court, are required to speculate about all three factors by trying to weigh the relative credibility of the people involved in the interrogation. Such an unreliable process is inexcusable when it is unnecessary because a means of absolute verification was readily available.
In Grey, we stated that:
We do hold, that, in the context of a custodial interrogation conducted at the station house or under other similarly controlled circumstances, the failure of the police officer to preserve some tangible record of his or her giving of the Miranda warning and the knowing, intelligent waiver by the detainee will be viewed with distrust in the judicial assessment of voluntariness under the totality of circumstances surrounding the confession or admission. That is all the more so where the evidence demonstrates that, as here, the police officer made a conscious decision not to secure a written waiver or otherwise preserve his giving of the Miranda warning and the detainee’s waiver on the premise that to do so would alert the accused to exercise his rights and, thus, jeopardize the interrogation.
Grey, 274 Mont, at 214, 907 P.2d at 956.
The excuse given for not recording Cassell’s waiver of his Fifth Amendment rights is equally inadequate. In this case, his interrogators wanted to establish a rapport with him. However, that apparently having been accomplished, nothing prevented them from obtaining an acknowledgment from Cassell, once the recorder had been turned on, that he had been advised of his rights and had waived them. Certainly, that kind of acknowledgment could not have been *406 any more disturbing to him than being asked during a tape recorded interview whether he committed deliberate homicide.
This is now the second case in which we have dealt with the issue of whether it is necessary to record Miranda warnings and Fifth Amendment waivers, where feasible. I would conclude, as the Minnesota Supreme Court did in State v. Scales (Minn. 1994), 518 N.W.2d 587, that following two such admonitions, further refusal to record custodial interrogations is unreasonable and should result in suppression of any incriminating statements made during those interrogations. In that case, after issuing two previous warnings, that Court stated that:
[W]e hold that all custodial interrogation including any information about rights, any waiver of those rights, and all questioning shall be electronically recorded where feasible and must be recorded when questioning occurs at a place of detention. If law enforcement officers fail to comply with this recording requirement, any statements the suspect makes in response to the interrogation may be suppressed at trial. The parameters of the exclusionary rule applied to evidence of statements obtained in violation of these requirements must be decided on a case-by-case basis. Following the approach recommended by the drafters of the Model Code of Pre-Arraignment Procedure, suppression will be required of any statements obtained in violation of the recording requirement if the violation is deemed “substantial.” This determination is to be made by the trial court after considering all relevant circumstances bearing on substantiality, including those set forth in § 1503(2) and (3) of the Model Code of Pre-Arraignment Procedure. If the court finds a violation not to be substantial, it shall set forth its reason for such finding. The rule and the remedy will apply prospectively from the date of the filing of this opinion.
Scales, 518 N.W.2d at 592-93 (footnote omitted).
When the means is available, as it was in this case, there is no practical justification for the State’s failure to record a custodial interrogation. By its failure to do so, it jeopardizes the prosecution by risking suppression of incriminating statements which have been legally obtained. Just as importantly, it makes any determination that detainees have been illegally questioned virtually impossible. Neither outcome is acceptable when the means to avoid it is readily available.
Therefore, in the future, I will follow the rule from Scales and vote to suppress all criminal admissions made during custodial interroga *407 tions when there is neither a written waiver of the detainee’s rights, nor an electronic record of the State’s advice and the detainee’s response, assuming it is feasible to do one or the other.
For these reasons, I specially concur with the majority opinion.
JUSTICE HUNT joins in the foregoing concurring opinion.