No. 97-304

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 167

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JAMES ELMER WEAVER,

Defendant and Appellant.

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

The Honorable William Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James H. Goetz (argued), Brian M. Morris (argued), Goetz, Madden & Dunn, Bozeman, Montana;
James C. Bartlett, Kalispell, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, John Paulson, Assistant Attorney General (argued), Helena, Montana; Thomas J. Esch, Flathead County Attorney, Ed Corrigan, Deputy Flathead County Attorney, Kalispell, Montana

Heard: March 10, 1998

Submitted: March 10, 1998

Decided: July 1, 1998

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

**¶1 James Elmer Weaver (Weaver) was tried by a jury in the District Court for the Eleventh Judicial District, Flathead County, on four counts of sexual assault involving minors. He was convicted on two of the counts and acquitted on the other two counts. Weaver appeals from the judgment of conviction and sentence. We affirm in part, reverse in part, and remand for a new trial.**

**¶2 The following issues were raised on appeal:**

**¶3 1. Did the District Court commit plain error by failing to instruct the jury, sua sponte, that it had to reach a unanimous verdict as to at least one specific underlying act of sexual assault for each count charged in the information?**

**¶4 2. Did the District Court properly deny Weaver's motion to dismiss which was based upon the investigating officer's failure to record her interviews with the victims?**

**¶5 3. Did the District Court abuse its discretion with respect to its rulings on the testimony of Shawn Trontel and Judy Starr?**

**¶6 Because we reverse on the first issue and remand for a new trial, we decline to address the last issue regarding witness testimony.**

### Factual and Procedural Background

**¶7 Weaver was charged by information with four counts of sexual assault in violation of § 45-5-502(1), MCA. Weaver had been a volunteer with the Big Brothers/Big Sisters program (Big Brothers) in Whitefish since 1984. Over a period of eleven years, Big Brothers matched Weaver with five "little brothers." Four of these boys were named as victims in the charges against Weaver. All of the boys were between nine and eleven years old when they were matched with Weaver.**

**¶8 Weaver was first matched with J.M. in June 1984, and he acted as J.M.'s big brother until April 1989. In April 1994, J.M. was involved in an automobile accident wherein he sustained some brain damage and was thereafter diagnosed as mildly retarded. One night in June 1995, J.M. told his mother that he had been molested by Weaver during the time that he had been Weaver's little brother. J.M. had never before mentioned any inappropriate conduct on the part of Weaver. Because Weaver was still active in Big Brothers, J.M.'s mother reported the allegations to the director of Big Brothers who contacted the Flathead County Sheriff's Department.**

**¶9 Detective Maxine Lamb interviewed J.M. and on October 4, 1995, the Flathead County Attorney's Office filed a request for an arrest warrant. One month later, an information was filed charging Weaver with sexual assault against J.M. The information charged Weaver as follows:**

The Defendant, James Elmer Weaver, between approximately June, 1984, and

April, 1989, knowingly subjected another, J.M., date of birth May 2, 1975, to sexual contact without consent, in Flathead County, Montana, contrary to Section 45-5-502(1), M.C.A.

**¶10 Detective Lamb also interviewed T.C. T.C. was matched with Weaver in February 1991 and was Weaver's little brother until Big Brothers ended the relationship in August 1995 due to the allegations against Weaver. Detective Lamb interviewed T.C. at his school without first notifying his parents and without any school officials present in contravention of school policy. Based on an allegation from T.C. (that T.C. later said he was bullied into making) of a single incident of inappropriate touching, the Flathead County Attorney's Office filed an amended information on November 16, 1995, charging Weaver with sexually assaulting T.C. This amended information contained the original charge involving J.M. and also charged Weaver as follows:**

The Defendant, James Elmer Weaver, during the summer of 1993, knowingly subjected another, T.C., date of birth October 19, 1980, to sexual contact without consent, contrary to Section 45-5-502(1), M.C.A.

**¶11 Also included in this information was a charge involving E.B., who had been Weaver's little brother from January 1990 until July 1990. Detective Lamb had interviewed E.B. at his school, again without first notifying E.B.'s parents and without any school officials present in contravention of school policy. The charge involving E.B. stated:**

The Defendant, James Elmer Weaver, between approximately January 18, 1990, and July 2, 1990, knowingly subjected another, [E.B.], date of birth October 21, 1980, to sexual contact without consent, contrary to Section 45-5-502(1), M.C.A.

**¶12 After the allegations against Weaver had surfaced, Weaver's wife contacted the mother of the fourth boy, D.M., to enlist their help in defending Weaver against the pending charges. Weaver had been D.M.'s big brother from July 30, 1990, until December 1, 1990, when D.M. moved with his mother to Shelby. D.M.'s mother refused to support Weaver and, instead, contacted the Flathead County Attorney's Office.**

¶13 Detective Lamb interviewed D.M. at his home on February 21, 1996. On March 19, 1996, the Flathead County Attorney's Office filed a second amended information adding a charge of sexual assault involving D.M. This information stated, in part:

> The Defendant, James Elmer Weaver, between approximately July 30, 1990, and December, 1990, knowingly subjected D.M., date of birth August 21, 1981, to sexual contact without consent, in Flathead County, Montana, contrary to Section 45-5-502(1), M.C.A.

¶14 The fifth boy, K.L., was Weaver's little brother beginning sometime in 1988 and ending after one year when K.L. moved with his family to Eureka. Detective Lamb set up an interview with K.L., but that interview was canceled when K.L.'s mother insisted that the interview be videotaped and that she should receive a copy of the tape. No charges were filed involving K.L.

¶15 Detective Lamb refused to videotape or audiotape the interviews of any of the boys. Furthermore, she did not allow any witnesses present during those interviews and did not make any written notes of the interviews. She later testified that she does not record or take notes of the interviews in such cases so that the victims will not be further traumatized during the process of disclosing embarrassing information.

¶16 On May 29, 1996, Weaver filed a motion to dismiss the charges on the grounds that Detective Lamb intentionally failed to preserve evidence vital to his defense by failing to videotape or audiotape her interviews with the boys or to make handwritten notes of the interviews. Weaver argued that the interviews needed to be reviewable by defense counsel and the court and that the inability to do so resulted in a denial of his right to due process. The District Court held a hearing on June 14, 1996, and, four days later, issued an order denying the motion.

¶17 Trial before a jury was held June 20 through 27, 1996. All five boys testified at trial. J.M. testified to several incidents of sexual assault during the five years that he was Weaver's little brother. D.M. also testified to several incidents of sexual assault, but provided no specific dates or times for these incidents. E.B. testified to an incident on a fishing trip wherein Weaver touched the outside of E.B.'s pants prior to helping E.B. unbutton the top button of his pants so that E.B. could urinate. T.C. testified that Weaver merely explained to him that a penis had more purposes than simply urinating. K.L. testified that there had never been any sexual contact or

discussions between himself and Weaver.

¶18 In Weaver's defense, T.C.'s mother testified that T.C. suffered from liver cancer and, since there existed the potential for impotency and sterility, she had given T.C. a book on

teenage sexuality and told Weaver that T.C. might have questions regarding the book. T.C.'s mother testified that she objected to T.C. being named as a victim in this case as neither she nor T.C. believed that T.C. had been sexually assaulted by Weaver.

¶19 At the end of the State's case, Weaver moved for directed verdicts on the counts involving E.B. and T.C., but the District Court denied the motions. Thereafter, the jury found Weaver guilty on the charges involving J.M. and D.M. and not guilty on the charges involving T.C. and E.B.

¶20 On August 20, 1996, Weaver filed a motion to disqualify District Judge Katherine Curtis. A hearing was held on the disqualification motion on September 12, 1996, and the motion was granted the following week. On October 30, 1996, District Judge William Nels Swandal assumed jurisdiction of the case.

¶21 After a March 14, 1997 hearing, the District Court sentenced Weaver to two consecutive ten-year sentences. The court determined that treatment in the local community afforded Weaver a better opportunity for rehabilitation, thus the court suspended the entire sentence and placed Weaver on probation subject to certain conditions. These conditions included house arrest until Weaver substantially completed a sex-offender treatment program. Weaver appeals from the judgment of conviction and sentence.

## Issue 1.

¶22 *Did the District Court commit plain error by failing to instruct the jury, sua sponte, that it had to reach a unanimous verdict as to at least one specific underlying act of sexual assault for each count charged in the information?*

¶23 Weaver contends on appeal that the State's "vague allegations" as contained in the amended information and the District Court's general instructions regarding unanimity enabled the State to convict Weaver "merely by creating a bad taste in the

jury's mouth rather than proving a specific incident of sexual assault beyond a reasonable doubt." The State argues that since Weaver did not make a contemporaneous objection to the District Court's instructions on unanimity and did not propose any instructions of its own, Weaver did not preserve this issue for appeal and this Court may properly decline to review it.

¶24 We have consistently held that we will not consider issues raised for the first time on appeal when the appellant had the opportunity to make an objection at trial. *State v. Dahlin,* 1998 MT 113, ¶ 13, ___ P.2d ___, ¶ 13, 55 St.Rep. 446, ¶ 13 (citing *State v. Weeks* (1995), 270 Mont. 63, 86, 891 P.2d 477, 491). Pursuant to § 46-20-104(2), MCA, "[f]ailure to make a timely objection during trial constitutes a waiver of the objection except as provided in 46-20-701(2), [MCA,]" which provides:

> (2) Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. A claim alleging an error affecting jurisdictional or constitutional rights may not be noticed on appeal if the alleged error was not objected to as provided in 46-20-104, unless the convicted person establishes that the error was prejudicial as to the convicted person's guilt or punishment and that:
>
> (a) the right asserted in the claim did not exist at the time of the trial and has been determined to be retroactive in its application;
>
> (b) the prosecutor, the judge, or a law enforcement agency suppressed evidence from the convicted person or the convicted person's attorney that prevented the claim from being raised and disposed of; or
>
> (c) material and controlling facts upon which the claim is predicated were not known to the convicted person or the convicted person's attorney and could not have been ascertained by the exercise of reasonable diligence.

Unquestionably, Weaver's claim does not fall within one of these narrow statutory exceptions.

¶25 Nevertheless, while we have previously acknowledged the constraints of § 46-20-701(2), MCA, we have also recognized this Court's "inherent power and paramount obligation to interpret Montana's Constitution and to protect the various rights set

forth in that document." *State v. Finley* (1996), 276 Mont. 126, 137, 915 P.2d 208, 215. To that end we held in *Finley* that this Court may discretionarily review claimed errors that implicate a criminal defendant's fundamental constitutional rights, even if no contemporaneous objection is made and notwithstanding the inapplicability of the § 46-20-701(2), MCA, criteria, where failing to review the claimed error at issue may: (1) result in a manifest miscarriage of justice; (2) leave unsettled the question of the fundamental fairness of the trial or proceedings; or (3) compromise the integrity of the judicial process. *Finley*, 276 Mont. at 137, 915 P.2d at 215. Even so, we stated in *Finley* that "given the legislature's obvious intention to restrict the use of plain error review by its enactment of § 46-20-701(2), MCA, we will henceforth use our inherent power of common law plain error review sparingly, on a case-by-case basis. . . . " *Finley*, 276 Mont. at 138, 915 P.2d at 215.

¶26 Before we can invoke common law plain error review, we must first determine whether the alleged error implicates Weaver's fundamental constitutional rights. Article II, Section 26 of the Montana Constitution provides in part: "In all criminal actions, the verdict shall be unanimous." Since the right to a unanimous verdict is explicit in the Declaration of Rights in Montana's Constitution, it is a fundamental right. *See Gryczan v. State* (1997), 283 Mont. 433, 449, 942 P.2d 112, 122.

¶27 Next, we must determine whether the failure to review the claimed error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of Weaver's trial, or compromise the integrity of the judicial process. Uncertainty about the nature of the verdict in this case--i.e., whether the jurors were unanimous in their verdict, certainly brings into question the fundamental fairness of Weaver's trial. Hence, having met the criteria established in *Finley*, we invoke common law plain error review in this case to determine whether the District Court erred in failing to instruct the jury that it had to reach a unanimous verdict as to at least one specific underlying act of sexual assault for each count charged in the information.

¶28 The standard of review of jury instructions in criminal cases is whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *State v. Patton* (1996), 280 Mont. 278, 286, 930 P.2d 635, 639 (citing *State v. Brandon* (1994), 264 Mont. 231, 237, 870 P.2d 734, 737; *State v. Lundblade* (1981), 191 Mont. 526, 529-30, 625 P.2d 545, 548). Moreover, we recognize that a district court has broad discretion when it instructs a jury. *Patton*, 280 Mont. at 286, 930 P.2d at

**639 (citing *State v. Ross* (1995), 269 Mont. 347, 358, 889 P.2d 161, 167).**

**¶29 In the case before us on appeal, the District Court charged the jury with the following general unanimity instruction:**

> The law requires the jury verdict in this case to be unanimous. Thus, all twelve of your number must agree in order to reach a verdict on each Count contained in the Information whether the verdict be guilty or not guilty. . . .

In addition, the court instructed the jury as follows:

> Each count charges a distinct offense. You must decide each count separately. The defendant may be found guilty or not guilty of any or all of the offenses charged. Your findings as to each count must be stated in a separate verdict.

**¶30 Weaver contends that these instructions were insufficient as the two counts for which he was convicted broadly charged a protracted series of alleged illicit acts spread over a lengthy period of time and, as a result, the jury may have unanimously believed that he was guilty of something without actually agreeing unanimously on precisely which acts he was guilty. Weaver argues that if a jury is not required to unanimously find a defendant guilty of a specific act, the State would be relieved of its burden to prove every element of a criminal offense beyond a reasonable doubt.**

**¶31 The State contends, on the other hand, that the jury verdict in this case shows unanimous agreement that Weaver committed the offense of sexual assault against J. M. and D.M. The State argues that Weaver's reliance on federal appeals court cases is misplaced as those cases are predicated upon federal statutes far different from the sexual assault statute at issue here. While the federal statutes do require different elements, the reasoning of the courts of appeals is instructive and the principles at issue are universal.**

**¶32 In one of the cases cited by Weaver, *United States v. Holley* (5th Cir. 1991), 942 F.2d 916, the Fifth Circuit Court of Appeals held that the failure to give a specific unanimity instruction was reversible error. *Holley*, 942 F.2d at 923. The indictment expressly charged that the defendant had committed perjury by making certain specific statements. The court in *Holley* determined that there was a reasonable possibility that the jury was not unanimous with respect to at least one statement in**

each count because the general unanimity instruction failed to require that all of the jurors concur in the "knowing falsity of at least one particular statement." *Holley*, 942 F.2d at 929.

¶33 In its analysis of this issue, the *Holley* court noted:

> As Justice Blackmun recently observed in his separate concurrence in McKoy v. North Carolina, 494 U.S. 433, 110 S.Ct. 1227, 1234, 1237 n.5, 108 L.Ed.2d 369(1990): "[i]n federal criminal prosecutions, where a unanimous verdict is required, the Courts of Appeals are in general agreement that *'[u]nanimity . . . means more than a conclusory agreement that the defendant has violated the statute in question; there is a requirement of substantial agreement as to the principal factual elements underlying a specified offense.'"* (quoting United State v. Ferris, 719 F.2d 1405, 1407, (9th Cir. 1983)). See also United States v. Gipson, 553 F.2d 453, 456-459 (5th Cir. 1977). We have previously stated that
>
> > "[t]he unanimity rule thus requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged. *Requiring the vote of twelve jurors to convict a defendant does little to insure that his right to a unanimous verdict is protected unless this prerequisite of jury consensus as to the defendant's course of action is also required."* Id. at 457-58.

*Holley*, 942 F.2d at 925 (emphasis added).

¶34 In like manner, the Ninth Circuit Court of Appeals reversed a defendant's conviction for distributing cocaine and conspiracy to distribute cocaine even though the trial judge had given the jury a general instruction that their verdict had to be unanimous. *United States v. Echeverry* (9th Cir. 1983), 719 F.2d 974. In making this determination, the Court of Appeals stated:

> When it appears . . . that there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts, the general unanimity instruction does not suffice. To correct any potential confusion in such a case, *the trial judge must*

> *augment the general instruction to ensure the jury understands its duty to unanimously agree to a particular set of facts.*

*Echeverry*, 719 F.2d at 975 (emphasis added).

**¶35 Federal appeals courts are not the only courts to recognize the necessity of specific unanimity instructions. In a case factually similar to the instant case, the Court of Appeals for the Third District of California, referring to what it called the "either/or" rule, stated that**

> when the accusatory pleading charges a single criminal act and the evidence shows more than one such unlawful act, either the prosecution must select the specific act relied upon to prove the charge or the jury must be instructed . . . that it must unanimously agree beyond a reasonable doubt that defendant committed the same specific criminal act.

*People v. Gordon* (1985), 165 Cal.App.3d 839, 853, 212 Cal.Rptr. 174, 183. Even though it did not find it applicable to the case before it, the court in *Gordon* also pointed out an exception to the "either/or" rule, i.e., the continuous course of conduct:

> This exception arises when the criminal acts are so closely connected that they form part of one and the same transaction, and thus one offense. Thus, "[s]eparate acts may also result in but one crime if they occur within a relatively short time span. . . ." In this case, there is absolutely no evidence concerning the timing of the two acts of sodomy, except that they allegedly occurred between 1978 and August 1979 and that one may have occurred during a camping trip in July 1979.

*Gordon*, 165 Cal.App.3d at 854-55, 212 Cal.Rptr. at 184-85.

**¶36 In the present case, the State contended during oral argument before this Court that Weaver's alleged assaults of J.M. and D.M. were just such a continuous course of conduct, thus it was not necessary for the jury to unanimously agree upon at least one specific underlying act of sexual assault for each count. However, Weaver was not charged with a continuous course of sexual assault against any of the boys. He was charged with knowingly subjecting another "to sexual contact without consent" occurring during a specific period of time. Moreover, Weaver's alleged acts were not**

so closely connected that "they form part of one and the same transaction, and thus one offense," nor did they occur within "a relatively short time span." The State's proof at trial was that the alleged discrete incidents of sexual assault took place over a five-year period in the case of J.M. and over a six-month period in the case of D.M.

¶37 In a similar fashion to the federal courts of appeal and the California Court of Appeals, this Court has previously held a trial court in error for not properly instructing the jury as to the unanimity of its verdict, albeit under a different basis than at issue in the instant case. *State v. Weldy* (1995), 273 Mont. 68, 79, 902 P.2d 1, 7. In *Weldy*, the defendant was charged with and found guilty of one count of felony assault under § 45-5-202(2), MCA (1993), which set forth three distinct alternatives for committing felony assault. Two of these alternatives were relevant in *Weldy*. We stated in that case that although the jury was instructed as to the requirement of a unanimous verdict, it was not clear from either the instructions or the verdict form under which alternative the jury reached its verdict. Thus, we concluded that the instructions and the verdict form should have been structured so that it was clear to the jury that it was required to reach a unanimous verdict under one alternative or the other, or both. *Weldy*, 273 Mont. at 78-79, 902 P.2d at 7.

¶38 While *Weldy* is not precisely on point with the case *sub judice*, our reasoning in *Weldy* is analogous. The two counts on which Weaver was convicted charged him with a series of unrelated allegations of sexual misconduct taking place over a period of years. It is not clear from either the jury instructions or the verdict form whether the jury unanimously agreed upon at least one specific underlying act of sexual assault for each count. We find the sound rationale in *Holley*, *Echeverry*, *Gordon* and *Weldy* persuasive, hence, we hold that the District Court should have given an instruction to make it clear to the jury that it was required to reach a unanimous verdict on at least one specific act for each count.

¶39 Having held in this manner, we are compelled to suggest some language for future cases where a specific unanimity instruction is determined to be necessary. Consequently, where appropriate, a trial court should charge the jury in language similar to either of the following California model jury instructions:

> The defendant is charged with the offense of _____. He may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts, but in order to find the defendant guilty, all the

jurors must agree that he committed the same act or acts. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict.

*Gordon*, 165 Cal.App.3d at 852, 213 Cal.Rptr. at 183 (quoting CALJIC No. 17.01 (4th ed. 1979)).

> Defendant is charged in [Count _____of] the information with the commission of the crime of _____, a violation of section _____ of the [Montana] Code, on or about a period of time between _____ and _____. [¶] In order to find the defendant guilty, it is necessary for the prosecution to prove beyond a reasonable doubt the commission of a specific act [or acts] constituting said crime within the period alleged. [¶] And, in order to find the defendant guilty, you must unanimously agree upon the commission of the same specific act [or acts] constituting said crime within the period alleged. [¶] It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict.

*Gordon*, 165 Cal.App.3d at 853, 213 Cal.Rptr. at 184 (quoting CALJIC No. 4.71.5 (4th ed. 1982)).

**¶40 Accordingly, we hold that the failure of the District Court to instruct the jury that it had to reach a unanimous verdict as to at least one specific underlying act of sexual assault for each count was error and we reverse and remand for a new trial.**

### Issue 2.

**¶41** *Did the District Court properly deny Weaver's motion to dismiss which was based upon the investigating officer's failure to record her interviews with the victims?*

**¶42 In his motion to dismiss, Weaver contended that the law enforcement officers investigating the charges against him failed to preserve evidence vital to his defense by intentionally failing to videotape or audiotape any of the interviews with the four boys and by failing to take or preserve handwritten notes of the interviews. Weaver argued that some record of the interviews should have been preserved so that it could be reviewed by defense counsel as well as the court and that the inability to preserve a record of the interviews resulted in a denial of Weaver's right to due process. In its**

order denying Weaver's motion, the District Court noted that Weaver was unable to cite to any cases that hold that the failure to record interviews is a denial of due process as a matter of law. The court concluded that Weaver was not entitled to dismissal of the charges against him because the failure to record the interviews did not constitute destruction of material exculpatory evidence.

¶43 The grant or denial of a motion to dismiss in a criminal case is a question of law. *City of Helena v. Danichek* (1996), 277 Mont. 461, 463, 922 P.2d 1170, 1172 (citing *State v. Hansen* (1995), 273 Mont. 321, 323, 903 P.2d 194, 195). Our standard of review of a district court's conclusion of law is plenary and we will review the court's conclusion to determine whether it is correct. *Danichek*, 277 Mont. at 463, 922 P.2d at 1172 (citing *Hansen*, 273 Mont. at 323, 903 P.2d at 195; *State v. Rushton* (1994), 264 Mont. 248, 255, 870 P.2d 1355, 1359).

¶44 Weaver contends on appeal that "there is strong reason to believe" that the interviews conducted in this case were "unduly suggestive and coercive." He relies on *State v. Michaels* (N.J. 1994), 642 A.2d 1372, for his contention that sufficiently coercive or suggestive interview practices can irremediably alter the perceptions of child victims, thus, absent exigent circumstances, all such interviews should be recorded to insure a defendant's right to due process.

¶45 The defendant in *Michaels* was a nursery school teacher who had been convicted of bizarre acts of sexual abuse against many of the children in her care. In setting aside her conviction, the New Jersey Supreme Court concluded that the interviews of the child victims were highly improper and that investigators employed coercive and unduly suggestive methods. The court determined that, as a result, a substantial likelihood existed that "the children's recollection of past events was both stimulated and materially influenced by that course of questioning." *Michaels*, 642 A.2d at 1380. The court concluded that if the state intended to reprosecute the defendant, a hearing should be held to determine whether the statements and testimony elicited by the improper interview techniques retained a sufficient degree of reliability to warrant admission at trial. *Michaels*, 642 A.2d at 1384-85.

¶46 While the court in *Michaels* noted that videotaping the initial interview is "a matter of sound interviewing methodology," *Michaels*, 642 A.2d at 1379 n.1, nothing in *Michaels* suggests that the failure to record interviews with child victims is a denial of a defendant's right to due process as a matter of law. On the contrary, failing to

videotape or otherwise document the initial interview is just one of the factors that the court in *Michaels* looked at to determine the reliability and thus the admissibility of the child victim's statements. *Michaels*, 642 A.2d at 1382-83.

¶47 We, too, recognize the potential for coercive or highly suggestive interrogation techniques to create a significant risk that the interrogation itself will distort a child's recollection of events. However, we do not find that to be the case here. Unlike the children in *Michaels,* who were all between three and five years old at the time they were interviewed, the boys in the present case were all over 14 years old when they were interviewed by Detective Lamb.

¶48 Furthermore, the only evidence to indicate the possibility that the interviews in this case may have been coercive or suggestive is the testimony at trial of T.C. and T. C.'s mother that T.C. felt bullied by Detective Lamb and of K.L.'s mother that Detective Lamb started "firing questions" at her making their conversation "not particularly" pleasant. Weaver was not convicted of the charges involving T.C. and no charges were ever filed involving K.L. There is no evidence that the interviews of the two boys that Weaver was convicted of assaulting, J.M. and D.M., were improper in any way.

¶49 We rejected some of these same arguments in *State v. Hanson* (1997), 283 Mont. 316, 940 P.2d 1166, wherein the defendant raised a similar question of the reliability of the child victim's statements based on coercive or suggestive interviewing techniques. We noted that the failure of Detective Lamb, the investigating officer in *Hanson* as well as in the present case, to preserve the record of her interview with the victim and the effect of her interview techniques on the reliability of the victim's testimony were raised by Hanson's defense counsel during trial and were properly considered by the jury. In a similar fashion, these same matters were considered by Weaver's jury since Weaver examined Detective Lamb and each victim about the initial interviews.

¶50 Weaver suggests that we should adopt a per se rule that, absent exigent circumstances, child testimony may not be used in a prosecution such as his unless contemporaneous records of the interview are made. Weaver has not cited to any decision or authority for such a rule. In fact, *Michaels*, which Weaver relies on for most of his contentions, specifically states that "children, as a class, are not to be viewed as inherently suspect witnesses. . . . [U]nder certain circumstances children's

accounts of sexual abuse can be highly reliable." *Michaels*, 642 A.2d at 1376.

¶51 While we decline to adopt a per se rule that the interviews of child sexual abuse victims must be recorded, we recognize that the better practice may be to create some record of the interviews. In *State v. Grey* (1995), 274 Mont. 206, 214, 907 P.2d 951, 956, we held that

> in the context of a custodial interrogation conducted at the station house or under other similarly controlled circumstances, the failure of the police officer to preserve some tangible record of his or her giving of the *Miranda* warning and the knowing, intelligent waiver by the detainee will be viewed with distrust in the judicial assessment of voluntariness under the totality of circumstances surrounding the confession or admission. That is all the more so where the evidence demonstrates that, as here, the police officer made a conscious decision not to secure a written waiver or otherwise preserve his giving of the *Miranda* warning and the detainee's waiver on the premise that to do so would alert the accused to exercise his rights and, thus, jeopardize the interrogation.

¶52 We specifically did not hold in *Grey* that the police must tape record or create an audio-visual record of *Miranda* warnings or the detainee's waiver of his rights. We did conclude, however, that this may be the better practice and would help assure that the accused receives a constitutionally adequate *Miranda* warning.

¶53 In the same way, the failure of the investigating officer in child sexual abuse cases to preserve some tangible record of the interview, in a controlled situation and absent exigent circumstances, will be viewed with distrust in the judicial assessment of the veracity of the child victims' statements. This is all the more so where the evidence demonstrates that, as in the case before us, the investigating officer made a conscious decision not to videotape or audiotape the interviews or to preserve any other kind of record of the interviews.

¶54 Nevertheless, we agree with the District Court in this case that Detective Lamb's failure to record the interviews did not constitute destruction of material exculpatory evidence. It is well settled that

> while a criminal defendant has a constitutional right to obtain exculpatory

evidence and that the denial of such right is a violation of due process, this right is only a personal right to obtain exculpatory evidence. It does not require that the police officers take initiative or even assist in procuring evidence on behalf of a defendant.

*State v. Patton* (1996), 280 Mont. 278, 284, 930 P.2d 635, 638 (citing *State v. Swanson* (1986), 222 Mont. 357, 361-62, 722 P.2d 1155, 1157-58; *In re Martin* (Cal. 1962), 374 P.2d 801, 803). Furthermore,

[O]nly a deliberate or intentional suppression of exculpatory evidence is a per se violation of due process. To amount to a violation of due process, negligently suppressed evidence must be material and of substantial use, vital to the defense, and exculpatory.

*Patton*, 280 Mont. at 285, 930 P.2d at 639 (citing *State v. Sadowski* (1991), 247 Mont. 63, 79, 805 P.2d 537, 547; *State, City of Bozeman v. Heth* (1988), 230 Mont. 268, 272, 750 P.2d 103, 105). There has been no indication in the present case that, had the interviews been recorded in some way, that evidence would have cleared Weaver of the charges against him.

**¶55 Accordingly, we hold that the District Court did not err in denying Weaver's motion to dismiss based upon the investigating officer's failure to record her interviews with the victims.**

**¶56 Affirmed in part, reversed in part and remanded for a new trial.**

/S/ JAMES C. NELSON

We Concur:

/S/ JIM REGNIER

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

No

Justice Terry N. Trieweiler did not participate in this decision.

District Judge John C. McKeon specially concurs.

**¶57 I agree with the decision reached in the majority opinion. However, this opinion does not fully state my views on the use of the common law plain error review in reaching this decision. For this reason, I issue this concurring opinion.**

**¶58 The majority opinion fails to point out that common law plain error review involves an analysis of whether or not the alleged error was harmless. In criminal cases, this analysis places the burden on the State to show plain error found on review to be harmless beyond a reasonable doubt.**

**¶59 Although not clearly stated, it is my feeling that analysis for harmless error played a significant part in applying the common law plain error review to this case. The "either/or" rule and model jury instructions found in the majority opinion are from *People v. Gordon* (1985)*, 165 Cal.App.3d 839, 212 Cal.Rptr. 174. After finding error, one must note that the *Gordon* court proceeded to analyze whether the error was harmless beyond a reasonable doubt. *Gordon*, 165 Cal.App.3d at 855, 212 Cal. Rptr. at 185. Further, this Court itself, in a prior criminal case applying plain error review, stated clearly what is missing here; i.e., the error was not harmless beyond a reasonable doubt. *State v. Sullivan* (1996), 280 Mont. 25, 35, 927 P.2d 1033, 1039.**

**¶60 The significance of involving questions of harmless error into this analytical process is more clearly pointed out in *Gordon*. In *Gordon*, the court pointed out that there was presented more than one explanation to the two distinct and different acts of alleged molestation. The test applied for harmless error was "whether the case is one in which the jury's verdict necessarily implies that it did not believe the only defense offered." *Gordon*, 165 Cal.App.3d at 855, 212 Cal.Rptr. at 185. The court then concluded that because "the jury could have accepted one of the defenses and not another . . . there is no basis in reason for the inference that the jury must have believed beyond a reasonable doubt" that the defendant committed both acts of molestation. *Gordon*, 165 Cal.App.3d at 856, 212 Cal.Rptr. at 186.**

**¶61 In this case, Weaver presented more than one explanation as a defense to the charges against him. As such, the State was unable to prevail using the "only defense" argument found in *Gordon*. Yet, the point of *Gordon* is that there may be**

circumstances where the State is able to show beyond a reasonable doubt that error triggering common law plain error review is harmless. Those circumstances do not exist in this case.

¶62 An understanding of the circumstances of each case is not only pertinent to a review for harmless error but is also needed to address the Court's admonition that a common law plain error review without contemporaneous objection be used "sparingly". Parties on appeal seeking plain error review or responding to such efforts should make every effort to understand why contemporaneous objection was not made. It is possible that under the circumstances of the case, a tactical decision was knowingly made by a party not to make contemporaneous objection. In such event, it might be implied that the party believed the error to be harmless. Again, the burden is on the State to show the error to be harmless beyond a reasonable doubt and based on the record in this case it was unable to do so.

/S/ JOHN C. McKEON

District Judge, sitting for Justice Terry N. Trieweiler

Justice Karla M. Gray concurs and dissents.

¶63 I concur in the Court's opinion on issue two, which relates to the District Court's denial of Weaver's motion to dismiss. I respectfully dissent from that opinion on issue one and, because I would not reverse and remand for a new trial on that issue, I would reach the merits of issue three and affirm the District Court's evidentiary rulings regarding the testimony of Shawn Trontel and Judy Starr.

¶64 It is my view that the Court errs in reaching the merits of issue one, which is whether the District Court erred in failing to more specifically instruct the jury. The basis of my dissent on this issue was set forth in my special concurring opinion in *Finley* and need not be repeated at length here. Suffice it to say that the Court oversteps its bounds under the separation of powers on which our three-branch government rests when it continues to ignore § 46-20-701, MCA, a statute duly enacted by the Montana Legislature. Absent a successful constitutional challenge to that statute, it is our duty to apply the statute according to its terms. Doing so here mandates that we decline to address the first issue because no contemporaneous objection was made in the District Court and, under § 46-20-701, MCA, the objection

is waived unless it meets one of the exceptions set forth in subsection (2) of the statute. As the Court correctly states, Weaver's claim unquestionably does not fall within any of the narrow statutory exceptions. That should be the end of our inquiry, yet the Court goes on to apply the "common law plain error doctrine."

¶65 It is disingenuous for the Court to reiterate that "[w]e have consistently held that we will not consider issues raised for the first time on appeal when the appellant had the opportunity to make an objection," and then go on to apply a common law doctrine which is in derogation of a duly enacted statute and which allows it to "opt out" of both purportedly consistent holdings and its obligation to apply statutes passed by the Legislature. Unfortunately, the Court's continued willingness to do so effectively precludes, as a practical matter, a constitutional challenge to § 46-20-701, MCA. No lawyer would bother to advance such a challenge for the Court's consideration when it is clear that the statutory hurdle need not be overcome.

¶66 I would apply our "consistent" holdings and refuse to consider issue one. Weaver had an opportunity to make an objection about the jury instructions at trial and failed to do so. Nor does his failure to object fall within one of the statutory exceptions to the rule that alleged error not objected to cannot be noticed on appeal. Under such circumstances, our obligation is clear and I dissent from the Court's refusal to discharge that obligation.

/S/ KARLA M. GRAY

Chief Justice J. A. Turnage concurs in the foregoing concurrence and dissent.

/S/ J. A. TURNAGE