No. 98-163

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 299

STATE OF MONTANA,

Plaintiff and Respondent,

v.

DANNY M. DAHLIN,

Defendant and Appellant.

APPEAL FROM: District Court of the Tenth Judicial District,

In and for the County of Fergus,

Honorable John R. Christensen, Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender's Office, Helena, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; Patricia J. Jordan,

Assistant Attorney General, Helena, Montana

Thomas P. Meissner, County Attorney, Forsyth, Montana

Submitted on Briefs: October 29, 1998

Decided: December 8, 1998

Filed:

_____

Clerk


Chief Justice J. A. Turnage delivered the Opinion of the Court.

**¶1. Danny Dahlin appeals from his conviction of perjury in the Tenth Judicial District Court, Fergus County. We affirm.**

**¶2. The issues are:**

**¶3. 1. Is Dahlin's perjury conviction invalid because the court allowed as evidence testimony from his brother's earlier DUI trial the result of which was later reversed on appeal?**

**¶4. 2. Did the verdict form deny Dahlin's right to a unanimous jury verdict?**

**¶5. 3. Did the court err in admitting the testimony of Cami Meader that Dahlin's brother had pushed her into the driver's seat during the initial stop of the pickup and the testimony of Roxie Nilsen that she did not drive Dahlin to the pickup?**

**¶6. Dahlin was charged with perjury based on the allegation that he testified falsely at his brother's trial for a January 2, 1997 DUI (driving under the influence of alcohol) offense. The information alleged that Dahlin testified at his brother's trial that he, not his brother, was driving the vehicle when his brother was arrested for DUI, and that this testimony was both false and material to the proceedings.**

**¶7. At his brother's trial, Dahlin testified that he had been with his brothers, his mother, and Cami Meader at the Bar 19 in Lewistown, Montana, on the evening of January 2. Dahlin testified that he went home early and that Meader offered to drive his brother home. He testified that his brother later called him at home, saying he**

and Meader had been pulled over, Meader had been arrested for DUI and failure to carry insurance, and he needed someone to drive his truck home. Dahlin testified that because his mother was in bed and had been drinking, he called Roxie Nilsen and asked her for a ride into town to pick up his brother and the truck.

¶8. Dahlin further testified at his brother's trial that when he did not find his brother where they had agreed to meet, he walked over to the parking lot where the truck was parked and found his brother sitting inside the pickup. Dahlin testified that he got in and began driving his brother home, but that when they saw a highway patrol officer following them, he became worried about being caught driving a vehicle with no insurance. He testified that he jumped out of the truck and ran away down an alley. Dahlin testified that he had lied in an earlier statement to the police when he said that his mother had given him a ride into town.

¶9. At Dahlin's trial on the perjury charge, the State read into evidence Dahlin's testimony at his brother's DUI trial. The State then called Dahlin's brother, who testified consistently with Dahlin's testimony at the earlier trial.

¶10. Cami Meader testified at Dahlin's perjury trial about events preceding the arrest of Dahlin's brother for DUI. Meader testified that Dahlin's brother had been driving the truck when it was stopped by Lewistown, Montana police officers but that he forced her into the driver's seat after he was pulled over. Meader was arrested for DUI.

¶11. The State also presented the testimony of Kelly Mantooth, the Montana highway patrolman who arrested Dahlin's brother for DUI. Mantooth testified that after Meader was arrested for DUI, the police officers moved the truck into a motel parking lot and instructed Dahlin's brother, who appeared to be intoxicated and did not have a valid driver's license, not to drive it. Dahlin's brother walked away. Mantooth remained parked at the scene.

¶12. Mantooth soon saw a person wearing cowboy boots run from a motel across the street into the parking lot where the truck was parked. The truck drove off and Mantooth followed it through a series of turns. He lost sight of the truck for "a couple seconds" as it went around a corner, and then saw it stopped by the side of the road. When he approached, Dahlin's brother was sitting in the passenger seat and no one was in the driver's seat. The keys were on the road about twenty feet from the

truck, and the driver's side window was open. Mantooth arrested Dahlin's brother for DUI. At the police station, Dahlin's brother told Mantooth that Dahlin had been driving the truck but had run away.

¶13. According to Mantooth, Dahlin went to the police station the next day and executed a written statement concerning the events of the previous night. He wrote that he was driving with his mother when they saw his brother walking down the street; they picked the brother up and took him to his truck, and Dahlin began driving the brother home. Dahlin wrote that when he realized they were being pulled over, he ran away because he was afraid he would be arrested for driving an uninsured vehicle. Dahlin's written statement was introduced into evidence at his trial. Also introduced into evidence was a second written statement executed by Dahlin later the same day, in which he wrote that the first statement was false and that he was at home when his brother was pulled over.

¶14. Roxie Nilsen testified at Dahlin's trial that she was aware that Dahlin's brother had been arrested for DUI. She testified that Dahlin and his brother asked her to help them by saying that she gave Dahlin a ride, but that she did not actually give him a ride that night.

¶15. In his defense, Dahlin presented expert testimony that Mantooth was far enough behind the truck that he would not have been able to see Dahlin running away from it. The jury found Dahlin guilty of perjury and he appeals.

Issue 1

¶16. Is Dahlin's perjury conviction invalid because the court allowed as evidence testimony from his brother's earlier trial the result of which was later reversed on appeal?

¶17. After Dahlin was convicted of perjury, this Court overturned his brother's DUI conviction. *State v. Dahlin*, 1998 MT 113, 961 P.2d 1247, 55 St.Rep. 446. The basis for that decision was failure to provide a jury trial, which right Dahlin's brother had not waived. Dahlin argues that evidence from his brother's trial is no longer useable against him and that without the evidence from his brother's trial the State cannot support the elements of his perjury conviction beyond a reasonable doubt. He maintains, therefore, that the perjury charge and his conviction of perjury must be

dismissed with prejudice.

¶18. As authority for his position, Dahlin cites *State v. White* (Wash. App. 1982), 644 P.2d 693, and *Loper v. Beto* (1972), 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374. In *White*, the Court of Appeals of Washington reversed defendant White's perjury conviction after concluding that the testimony claimed to be perjury was literally true. The court then determined that the conviction was based upon insufficient evidence. *White*, 644 P.2d at 699. The court went on to rule, as to White's separate trial on a theft charge, that the introduction of evidence of the perjury conviction for impeachment purposes rendered the conviction invalid. The court remanded so that a new trial could be held on the theft charge, excluding all evidence concerning the perjury conviction. *White*, 644 P.2d at 700.

¶19. In *Loper*, the United States Supreme Court overturned defendant's conviction of statutory rape. At trial, the court had allowed into evidence testimony concerning defendant's prior criminal convictions, which convictions the *Loper* Court held were constitutionally invalid because the defendant had been denied the assistance of counsel in those matters. The Court stated the issue as whether the use of prior void convictions for impeachment violated the right to due process of law when their use might well have influenced the outcome of the case. The Court held that retroactive application to invalidate the statutory rape conviction was proper because the absence of counsel in the prior convictions went to "the very integrity of the fact-finding process" and those convictions therefore lacked reliability. *Loper*, 405 U.S. at 484, 92 S.Ct. at 1019, 31 L.Ed.2d at 382.

¶20. Here, no prior conviction later determined invalid was introduced into evidence. Instead, the evidence introduced and now in dispute was the testimony of a witness, Dahlin, under oath at the prior trial. In contrast to the prior convictions at issue in *White* and *Loper*, Dahlin's testimony has not been ruled invalid or void; the rationale for reversing Dahlin's brother's conviction was unrelated to Dahlin's testimony. *White* and *Loper* are therefore not on point.

¶21. Dahlin argues that because his brother's conviction has been reversed, there is nothing to indicate that he gave false testimony at an official proceeding. However, where a court has jurisdiction over subject matter, false testimony before the court is perjury, notwithstanding an ultimate determination that the proceeding is otherwise defective. *United States v. Williams* (1951), 341 U.S. 58, 68-69, 71 S.Ct. 595, 601, 95 L.

Ed. 747, 754-55. Dahlin concedes that the District Court had subject matter jurisdiction over his brother's DUI trial and that it also had personal jurisdiction over his brother.

¶22. Further, this Court has upheld the use of evidence from a prior trial which has been declared invalid, as long as the evidence is otherwise admissible. *State v. Hall* (1988), 234 Mont. 57, 761 P.2d 1283; *Waite v. Waite* (1964), 143 Mont. 248, 389 P.2d 181. Apart from his argument that his testimony was inadmissible because his brother's trial was later determined invalid, Dahlin has not argued that his testimony at that trial was otherwise inadmissible.

¶23. We hold that under these facts, Dahlin's perjury conviction is not invalid due to the reliance upon testimony given at his brother's DUI trial the result of which was later reversed. Issue 2

¶24. Did the verdict form deny Dahlin's right to a unanimous jury verdict?

¶25. The special verdict form given to the jury asked only for a finding of whether Dahlin was guilty or not guilty, without further elaboration. Jury Instruction No. 4 stated that Dahlin was charged with perjury, and Jury Instruction No. 13 defined that offense as "A person commits the offense of perjury if, in an official proceeding, he knowingly makes a false statement under oath or equivalent affirmation." None of the jury instructions identified the specific date or facts of the charged act of perjury.

¶26. Dahlin argues on appeal that the jury instructions should have contained provisions limiting the jury's consideration to the specific criminal act charged in the information--his testimony at his brother's trial that he was driving his brother's truck. Dahlin maintains that the jury, or some members thereof, may have voted to convict him for lying about other matters.

¶27. The difficulty in this argument is that Dahlin failed to offer a special verdict form containing the specifications which he now complains were fatally missing. Moreover, Dahlin's counsel consented, during the settling of jury instructions, to the District Court's suggestion that the jury be informed of the facts upon which the perjury charge was based in closing arguments. Counsel for both sides did, in fact, address this subject in their closing arguments.

¶28. Dahlin argues that this issue should nevertheless be reviewed under the plain error doctrine, citing *State v. Weaver*, 1998 MT 167, 964 P.2d 713, 55 St.Rep. 668. In *Weaver*, the alleged error was failure to properly instruct the jury on multiple counts. In that case, a majority of this Court determined that the requirements for plain error were present: an alleged error implicating a fundamental constitutional right, which error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of a trial, or compromise the integrity of the judicial process. *Weaver*, ¶ 25.

¶29. Dahlin also cites *State v. Weldy* (1995), 273 Mont. 68, 902 P.2d 1, in support of his plain error argument. In *Weldy*, the defendant was charged with felony assault under two alternative statutory subsections. The verdict form did not ask the jury to specify which of the two types of felony assault served as the basis for their finding; therefore, this Court concluded that the defendant's constitutional right to a unanimous verdict was not protected by the jury instructions or the jury verdict form. *Weldy*, 273 Mont. at 78, 902 P.2d at 7.

¶30. In contrast to defendants Weaver and Weldy, Dahlin was charged with an offense under a single theory. Nothing in the arguments of counsel, the jury instructions, or the special verdict form contradicted this fact. We conclude that this is not a case in which review is justified under the plain error doctrine, and that this issue was waived in the proceedings below. It cannot now be raised on appeal.

Issue 3

¶31. Did the court err in admitting the testimony of Cami Meader that Dahlin's brother had pushed her into the driver's seat during the initial stop of the pickup and the testimony of Roxie Nilsen that she did not drive Dahlin to the pickup?

¶32. Our standard of review of a trial court's decision on the admissibility of evidence is whether the court abused its discretion. *State v. Medrano* (1997), 285 Mont. 69, 72, 945 P.2d 937, 939.

¶33. Dahlin moved *in limine* to exclude Nilsen's testimony on the basis that whether she gave him a ride to the pickup was immaterial or irrelevant to the perjury charge against him. The court found that Nilsen's testimony was relevant. Dahlin argues on appeal that Nilsen's testimony was both irrelevant and unduly prejudicial.

¶34. As the District Court noted, Dahlin's story about how he arrived at his brother's pickup truck was inseparably intertwined with his story about driving the pickup truck, as part of the *res gestae*. Well-established law allows the admission of evidence as to all facts and circumstances surrounding the commission of a crime. See, e.g., *State v. Moore* (1992), 254 Mont. 241, 836 P.2d 604. The jury was entitled to judge the credibility of Dahlin's entire story in order to determine whether he lied about driving his brother's truck.

¶35. Rule 403, M.R.Evid., provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Dahlin contends that Cami Meader's testimony concerning the first traffic stop of his brother's truck, when she was in the driver's seat, should have been excluded under this rule. He asserts that other equally probative evidence was available to the State, apparently referring to his brother's testimony about why he needed Dahlin to pick him up. He also asserts that the introduction of this particular evidence raised the risk that the jury would convict him for crimes other than those charged or that it would convict on the basis that "a bad person deserves punishment."

¶36. We, unlike Dahlin, credit the jury with the ability to distinguish between evidence concerning bad acts of Dahlin's brother and evidence concerning bad acts by Dahlin himself. We agree with the District Court that the jury was entitled to hear from all the available witnesses how this event came about. We hold that the District Court did not abuse its discretion in admitting the testimony of Meader and Nilsen.

¶37. Affirmed.


/S/ J. A. TURNAGE


We concur:

No

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER