No. 01-686

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 284

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

MICHAEL JAMES PRICE,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Eighth Judicial District,
                    In and for the County of Cascade,
                    The Honorable Kenneth R. Neill, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Chad Wright, Appellate Defender Office, Helena, Montana

        For Respondent:

                Hon. Mike McGrath, Attorney General; John Paulson,
                Assistant Attorney General, Helena, Montana

                Brant S. Light, Cascade County Attorney, John W. Parker, Deputy County
                Attorney, Great Falls, Montana


                      Submitted on Briefs:  July 2, 2002

                              Decided:  December 10, 2002

Filed:

                              _____
                                        Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1   The Appellant, Michael Price, was charged with nonsupport, a felony, in violation of § 45-5-621, MCA (1997), in the District Court for the Eighth Judicial District in Cascade County.  He was convicted following trial by jury and appeals from that conviction.  We reverse the judgment of the District Court and remand to the District Court for a new trial.

¶2   Price raises six issues on appeal.  We conclude that the following issues are all that need be addressed:

¶3   1.  Was there sufficient evidence for a reasonable trier of fact to find beyond a rational doubt that Price was capable of providing support?

¶4   2.  Did Instruction No. 6 violate Price's right to be free from *ex post facto* application of new laws that increase punishment?

¶5   3.  Did Instruction No. 7 impermissibly shift the burden of proof of an essential element of the offense to Price?

FACTUAL AND PROCEDURAL BACKGROUND

¶6   Michael James Price is the natural father of a child born on July 15, 1984.  Price and the child's mother, the former Sharon Newman, entered into a Child Custody and Support Agreement in March of 1988.  Pursuant to the agreement, Price was required to pay Newman $125 per month for child support while he was unemployed.  That amount increased to $228 for late payments.  When he secured employment, it was agreed that his child support obligation would

2

increase to $228 per month or the adjusted amount pursuant to the Child Support Guidelines, whichever was greater.

¶7   In January 1989, approximately nine months after entering the agreement, Price began serving a five-year sentence in a federal penitentiary for drug distribution.  During his incarceration, Price estimates he made about $5 a month and was unable to make child support payments.  His payments increased to $228 per month pursuant to the Child Custody and Support Agreement while he was in prison and accrued until he was released from prison on April 17, 1994.  The Child Support Enforcement Division (CSED) made no attempt to collect child support payments from Price while he was incarcerated.

¶8   In March of 1994, Nancy Steffens from CSED calculated that Price's child support obligation was $228 per month pursuant to the 1988 Child Custody and Support Agreement and $706 per month for the $16,944, which was past due at the time.  She did not know whether he was capable of making the payments or what his income was at that time.  Nevertheless, Steffens attempted to garnish Price's wages because he failed to make voluntary payments.

¶9   The child was adopted by his stepfather on May 29, 1996.  At that time, Price's obligation for additional child support ended.  However, his obligation to pay the past due child support continued, as did CSED's attempts to collect it.  CSED was able to collect $3394.55 through the garnishment of Price's wages and unemployment benefits.

¶10 Price's post-release employment is not well established. He volunteered little information to the CSED about his employment between 1988 and 1996 and it remains unclear exactly how many jobs he held during this period. Steffens testified that Price held numerous jobs following his release in April of 1994. However, there is no indication of when or how long Price was employed, or what his income was while employed at the various jobs referred to by Steffens. Price admitted that he earned about $200 per week for around one year while working for Skates Communication in 1994 and $22 per hour while working for a short period of time at Talcott Construction. It is not clear whether Price was employed with Talcott before or after his child was adopted. From January of 1996 to May of 1996, Price received $372 per month as unemployment benefits.

¶11 On May 14, 1999, Price was charged by Information with committing the offense of Nonsupport, a Felony, in violation of § 45-5-621, MCA (1997), for the period between March 1988 and May 1996. A unanimous jury found Price guilty on May 21, 2001, and Price received the two-year maximum sentence pursuant to the District Court's Judgement of Conviction and Sentence issued on August 14, 2001.

DISCUSSION

ISSUE 1

¶12 Was there sufficient evidence for a reasonable trier of fact to find beyond a rational doubt that Price was capable of providing support?

4

¶13 Price contends that the State did not produce sufficient evidence to prove that he was financially capable of making payments during the period in which nonsupport was a felony.

¶14 We review the sufficiency of evidence to support a verdict to determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Merrick*, 2000 MT 124, ¶ 7, 299 Mont. 472, ¶ 7, 2 P.3d 242, ¶ 7. This familiar standard pays proper deference to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts which are proven. *State v. Brown* (1989), 239 Mont. 453, 457, 781 P.2d 281, 284 (citation omitted).

¶15 Section 45-5-621, MCA (1997), provides in relevant part:

(1) A person commits the offense of nonsupport if the person fails to provide support that the person can provide and that the person knows the person is legally obliged to provide to a spouse, child, or other dependant.

. . . .

(3) If a defense to the charge of nonsupport is inability to pay, the person's inability must be the result of circumstances over which the person had no control. In determining ability to pay, after an allowance for the person's minimal subsistence needs, the support of a spouse, child, or other dependent has priority over any other obligations of that person.

. . . .

(7)(b) A person convicted of nonsupport who has failed to provide support under a court order or administrative order for 6 months or more or who has failed to provide support in a cumulative amount equal to or in excess of 6 months' support

5

shall be fined not to exceed $5,000 or be imprisoned in the state prison for a term not to exceed 2 years, or both. [Emphasis added.]

¶16 Nonsupport became a felony in 1993 when subsection 7(b) was added to the offense of nonsupport. Section 45-5-621(7)(b), MCA (1993). The prohibition against *ex post facto* application of the law, discussed in the next section of this Opinion, limits the time period during which the felony Price was charged with could actually have been committed to acts occurring after October 1, 1993, and prior to May 29, 1996, the date on which his child was adopted. Therefore, only evidence of ability to provide support subsequent to October 1, 1993, and prior to May 29, 1996, is relevant to Price's conviction.

¶17 Price maintains that because the definition of "support obligation" in § 40-5-201 (13), MCA (1997), includes the amount created by a failure to provide support or the amount owed pursuant to a support order, the ability to pay support means the ability to meet his total support obligation, which in his case was $924 per month. He contends that because the evidence at trial was insufficient to prove that he could meet his $924 per month support obligation, he could not be convicted of violating § 45-5-621, MCA (1997).

¶18 However, Price's interpretation is belied by the plain language of the statute and contravenes the purpose of the statute. The relevant language reads "the person fails to provide support that the person can provide . . . ." Section 45-5-621(1), MCA (1997). The purpose of § 45-5-621, MCA (1997), is to compel an

6

obligated parent to perform his or her duty and pay support that he or she is capable of paying. A defendant who is not capable of paying the entire amount of his support obligation is not immune from prosecution for nonsupport if he failed to pay support even though he could have paid, whether that amount was $50 or $500.

¶19 The State produced evidence, and Price testified, that he was employed part of the time between 1994 and 1996. The evidence was that Price made $200 per week for about a year starting at some point in 1994. However, Price made no voluntary payments between April 17, 1994, and January 1, 1996, when CSED began garnishing his unemployment benefits. Based on this evidence, we conclude that a rational trier of fact could have found that Price had the ability to pay some support, even if the amount was limited, and that satisfied the State's burden to prove that Price was able to pay child support.

## ISSUE 2

¶20 Did Instruction No. 6 violate Price's right to be free from *ex post facto* application of new laws that increase punishment?

¶21 Price contends that the manner in which the felony nonsupport statute was applied to his case violated his fundamental constitutional right to be free from *ex post facto* laws. He maintains that it is impossible to determine whether the jury unanimously agreed that he violated the law after October 1, 1993, the time when nonsupport became a felony, because he was charged with continuous conduct from March of 1988 through May of 1996. Price further argues that this Court should review the issue under the plain error doctrine, in spite of his trial attorney's failure

7

to contemporaneously object, because it implicates Price's fundamental constitutional rights. In the alternative, he asks that we determine whether his attorney was ineffective for failing to object on these grounds. The State contends that the court's instruction did not amount to plain error and that Price's failure to object at the District Court bars him from raising the issue on appeal.

¶22 Typically, a defendant's failure to preserve an issue in the district court precludes him from raising the issue on appeal. Section 46-20-104(2), MCA, provides:

> Upon appeal from a judgment, the court may review the verdict or decision and any alleged error objected to which involves the merits or necessarily affects the judgment. Failure to make a timely objection during trial constitutes a waiver of the objection except as provided in 46-20-701(2).

Section 46-20-701(2), MCA, sets forth the statutory exceptions to the objection requirement, however, none of those exceptions are present in this case.

¶23 Nonetheless, in *State v. Finley* (1996), 276 Mont. 126, 137, 915 P.2d 208, 215, we acknowledged the inherent power and paramount obligation of this Court to protect the rights set forth in the Montana Constitution. We held:

> [T]his Court may discretionarily review claimed errors that implicate a criminal defendant's fundamental constitutional rights, even if no contemporaneous objection is made and notwithstanding the inapplicability of the § 46-20-701(2), MCA, criteria, where failing to review the claimed error at issue may result in a manifest miscarriage of justice, may leave unsettled the question of fundamental fairness of the trial or proceeding, or may compromise the integrity of the judicial process.

*Finley*, 276 Mont. at 137, 915 P.2d at 215.

8

We emphasize that common law plain error is to be employed sparingly, on a case-by-case basis, pursuant to the narrow circumstances carved out by our holding in *Finley*. *Finley*, 276 Mont. at 138, 915 P.2d at 215. It is not a prophylactic for careless counsel.

¶24 Before we invoke common law plain error review, we must first determine whether the alleged error implicates Price's fundamental constitutional rights. *Finley*, 276 Mont. at 137, 915 P.2d at 215; *State v. Weaver*, 1998 MT 167, ¶ 26, 290 Mont. 58, ¶ 26, 964 P.2d 713, ¶ 26. The United States Constitution and the Montana Constitution expressly prohibit the enactment of *ex post facto* laws. U.S. Const., Art. I, § 10, cl.1; Article II, Section 31, Montana Constitution. We have held that the constitution prohibits *ex post facto* laws that: 1) retroactively make innocent action criminal; 2) enlarge the definition of a crime; or 3) increase the punishment for criminal acts. *State v. Goebel*, 2001 MT 155, ¶ 27, 306 Mont. 83, ¶ 27, 31 P.3d 340, ¶ 27. Because the prohibition in the Montana Constitution is found in our Bill of Rights, there is no question that *ex post facto* application of the law, if present in this case, violates Price's fundamental constitutional rights.

¶25 Next, we must determine whether the failure to review Price's claim will result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of Price's trial, or compromise the integrity of the judicial process. *Finley*, 276 Mont. at 137, 915 P.2d at 215; *Weaver*, ¶ 27. We conclude that the question of whether Price was convicted of felony nonsupport for conduct that occurred before the felony nonsupport

9

statute was enacted brings into question the fundamental fairness of Price's trial. Accordingly, the issue of whether Price was subjected to *ex post facto* application of the law requires this Court to review Price's appeal pursuant to the common law plain error doctrine in spite of the fact he did not raise the issue before the District Court.

¶26 The District Court gave the jury the following instruction:

> Instruction No. 6:
> Defendant is charged in the information with the crime of Nonsupport, a violation [sic], on or about a period of time between March, 1988 and May, 1996. In order to find the Defendant guilty, it is necessary for the prosecution to prove beyond a reasonable doubt the commission of a [sic] specific acts constituting the crime within the period alleged. And, in order to find the Defendant guilty, you must unanimously agree upon the commission of the same specific acts constituting the crime within the period alleged. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict.

No other explanation or guidance was provided to the jury by the court. Pursuant to Instruction No. 6, the jury returned a verdict that found Price guilty of the charge.

¶27 Price contends that because the crime with which he was charged and for which he was convicted did not become a felony until October 1, 1993, Instruction No. 6, which permitted the jury to find him guilty based on acts committed from 1988 through 1996, subjected him to an increased punishment for conduct that occurred prior to the effective date of the statute and, therefore, constituted *ex post facto* application of the law. We conclude that Price is correct.

¶28 On October 1, 1993, the Montana Legislature amended the offense of nonsupport and provided for felony penalties in addition

10

to the previous misdemeanor penalty. The new statute provided that any failure to meet a child support obligation subjected a person to a $500 fine, or six months in jail, or both. Section 45-5-621(7)(a), MCA (1993). However, a failure to meet a child support obligation for a period of six months or in a cumulative amount equal to six months was punishable by a $5,000 fine, or two years in prison, or both. Section 45-5-621(7)(b), MCA (1993). Price's failure to make child support payments was only punishable as a misdemeanor prior to October 1, 1993. However, the jury was instructed that he could be convicted of a felony for failure to pay prior to that date. Furthermore, the nature of the jury's verdict makes it impossible to determine the period of nonpayment for which he was convicted.

¶29 On appeal, the State assures us that there is no genuine possibility of jury confusion on this issue and that the contention that Price may have been convicted for conduct that occurred prior to the enactment of the felony offense is without merit. However, in its closing argument to the jury, the State emphasized Price's failure to make payments for the entire period from 1988 through 1996. The State stressed that the five years Price spent in prison were the result of voluntary conduct, over which he had control, and did not excuse him from paying child support. The evidence relied on in the State's argument related to the period of time from March of 1988 through October 1, 1993, and the jury was encouraged to consider those facts in its deliberations. The State encouraged the jury to consider the very evidence that it now contends could not have contributed to the jury's verdict.

11

¶30 We conclude that it is impossible to determine the period of time on which Price's conviction for felony nonsupport is based and that, therefore, Price's fundamental constitutional right to be free from *ex post facto* application of the law was violated. We reverse the judgment of the District Court and remand to the District Court for a new trial.

ISSUE 3

¶31 Did Instruction No. 7 impermissibly shift the burden of proof of an essential element of the offense to Price?

¶32 Price contends that Instruction No. 7 violated his constitutional right to due process because it impermissibly shifted the burden of proof of an essential element of the offense.

He asserts that language used in Instruction No. 7, which required that the inability to pay support result from circumstances over which the defendant had no control, relieved the prosecution from having to prove that Price had the ability to pay support. Price further argues that this Court should review the issue under the plain error doctrine, in spite of his failure to contemporaneously object, because it implicates his constitutional right to due process.

¶33 One of the fundamental principles of the criminal justice system is the requirement that the State prove each element of a charged offense beyond a reasonable doubt. *In re Winship* (1970), 397 U.S. 358, 363-64, 90 S.Ct. 1068, 1072-73, 25 L.Ed.2d 368; *State v. Fuller* (1994), 266 Mont. 420, 422, 880 P.2d 1340, 1342. The United States Supreme Court's holding in *Winship* is clear: "[W]e explicitly hold that the Due Process Clause protects the accused

12

against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364, 90 S.Ct at 1073. If the burden of proof was shifted as Price claims, there is no doubt his fundamental constitutional rights have been violated.

¶34 Next, we must determine whether the failure to review Price's claim will result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of Price's trial, or compromise the integrity of the judicial process. *Finley*, 276 Mont. at 137, 915 P.2d at 215; *Weaver*, ¶ 27. Burden shifting calls into question both the fairness of Price's trial as well as the integrity of the judicial process. Therefore, we conclude that it is necessary to review Price's due process claim pursuant to the common law plain error doctrine despite the fact that no contemporaneous objection was made in the District Court.

¶35 In a conclusory argument, Price contends that Instruction No. 7 impermissibly relieves the State from proving that he had the ability to pay child support because it required that he prove that his inability was involuntary if raised as a defense. The challenged language is as follows: "If a defense to the charge of nonsupport is inability to pay, the person's inability must be the result of circumstances over which the person had no control." We have not had the opportunity to consider an instruction of this nature and rely upon general legal principles of jury instruction interpretation to determine whether the burden of proof has been shifted.

¶36 A jury instruction shifts the burden of proof when the state requires the accused to prove that which, by virtue of the definition of the crime, the prosecution is required to prove beyond a reasonable doubt. *State v. Luchau*, 1999 MT 336, ¶ 14, 297 Mont. 415, ¶ 14, 992 P.2d 840, ¶ 14. In *Sandstrom v. Montana* (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39, the defendant argued that a jury instruction which provided, "the law presumes that a person intends the ordinary consequences of his voluntary action," violated his due process rights because it created a presumption of intent and reduced the State's burden to prove all of the elements of the crime beyond a reasonable doubt. In its analysis, the Court stated, "whether a defendant has been accorded his constitutional rights depends on the way in which a reasonable juror could have interpreted the instruction." *Sandstrom*, 442 U.S. at 514, 99 S.Ct. at 2454. The Court held that the instruction could have been interpreted as creating a burden shifting or conclusive presumption and deprived the defendant of due process of law. *Sandstrom*, 442 U.S. at 524, 99 S.Ct. at 2459.

¶37 "In determining what facts must be proven beyond a reasonable doubt, the state legislature's definition of the elements of the offense is usually dispositive." *Luchau*, ¶ 13. Here, the legislature has defined felony nonsupport as the failure to pay child support where there is an ability to do so, or where the inability to do so is the fault of the person accused. Therefore, it is the State's burden to prove that the defendant had the ability to pay child support or that the defendant's inability to do so was his own fault. While the District Court's Instruction

14

No. 7 did not expressly shift the burden of proving those facts to Price, we conclude that its wording and specifically its reference to inability as a "defense" could have been misleading regarding the State's burden and, therefore, direct that on re-trial Instruction No. 7 not be given in its current form.

¶38 Price also contends that his sentence was imposed in violation of § 46-1-401, MCA. However, because his conviction has been set aside and the case is remanded, his sentence is also vacated and we need not address whether it was legally imposed.

¶39 For these reasons, the judgment of the District Court is reversed and this case is remanded to the District Court for a new trial.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER