FILED

August 18 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0336

DA 14-0336

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 243

ROBERT JAMES WILKES, JR.,

        Petitioner and Appellant,

    v.

STATE OF MONTANA,

        Respondent and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-11-923
Honorable Ed McLean, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Larry D. Mansch, Brendan McQuillan, Montana Innocence Project;
Missoula, Montana

    For Appellee:

        Timothy C. Fox, Montana Attorney General, Pamela P. Collins, Assistant
Attorney General; Helena, Montana

        Kristen Pabst, Missoula County Attorney, Suzy Boylan, Deputy Missoula
County Attorney; Missoula, Montana

    For *Amicus Curiae* The Innocence Network:

        Colin M. Stephens, Smith & Stephens, P.C.; Missoula, Montana

Submitted on Briefs:  March 4, 2015
Decided:  August 18, 2015

Filed:

                                        Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1	Robert Wilkes appeals from the order of the Montana Fourth Judicial District Court, Missoula County, denying his petition for post-conviction relief. We reverse and remand.

## ISSUES

¶2	We review the following issues:

*1. Did the District Court err by failing to adequately address Wilkes's claims for post-conviction relief?*

*2. Did the District Court err by denying Wilkes's IAC claim?*

*3. Did the District Court abuse its discretion by denying Wilkes's post-conviction relief claims before conducting a hearing?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3	Wilkes's three-month-old son, Gabriel, died on October 26, 2008, following hemorrhaging in his head sustained on or before October 4, 2008. According to Wilkes, he had put Gabriel to sleep on the evening of October 4, 2008, after retrieving Gabriel from the care of a babysitter. A few minutes later, he discovered that Gabriel had vomited and was limp. He attempted CPR and, unable to find his phone, took Gabriel to the babysitter's nearby apartment. The babysitter called 911 while Wilkes continued to perform CPR.

¶4	When paramedics arrived, Gabriel was taken to Missoula Community Hospital and then, on October 6, 2008, to Sacred Heart Children's Hospital in Spokane, Washington. Doctors in Spokane found evidence of retinal hemorrhaging and subdural

2

hemorrhaging in Gabriel's brain, and they placed him on life support. Ultimately, Gabriel was removed from life support on October 21, 2008, and he died five days later.

¶5 Suspecting that Gabriel's injuries were non-accidental and caused by his father, the State charged Wilkes with deliberate homicide. At trial, the State argued that Gabriel died from abusive head trauma (AHT) (more commonly known as shaken baby syndrome) caused by Wilkes. The State's theory was that Gabriel was healthy when he left the care of the babysitter and that because he was in Wilkes's exclusive control thereafter, Wilkes must have been the cause of Gabriel's AHT. To support this theory, the State provided evidence that the babysitter fed Gabriel a bottle of formula just before Gabriel left the babysitter's care. It then provided expert witness testimony that Gabriel's injuries were consistent with an AHT diagnosis, that symptoms of AHT are displayed almost immediately following injury, and that Gabriel would not have been able to drink the bottle of formula once he was suffering from AHT. Based on this evidence, the State concluded that Gabriel was not suffering from AHT when he left the babysitter's care; that he was suffering from AHT by the time Wilkes and Gabriel returned to the babysitter's; that the injury causing Gabriel's AHT occurred in the interim; and that because Wilkes had exclusive control over Gabriel during this time, Wilkes must have caused Gabriel's AHT and resulting death.

¶6 Wilkes, represented by Scott Spencer, did not call any expert witnesses or, for that matter, any witnesses other than himself at trial. When he testified, Wilkes maintained his innocence, claiming that he did not harm Gabriel in any way. Meanwhile, Wilkes, through Spencer, left much of the State's evidence unrefuted. At trial, Spencer told the

3

jury that "virtually[] everything [in this case] is agreed to" but that Wilkes should be found not guilty because there was reasonable doubt as to the timing of the AHT. In the alternative, he argued that Wilkes was at most guilty of negligent homicide rather than deliberate homicide. Spencer did not introduce any evidence to support either of these theories. Ultimately a jury found Wilkes guilty of deliberate homicide. A judgment was entered on June 16, 2010, sentencing him to 40 years in Montana State Prison.

¶7 On July 18, 2011, Wilkes filed a petition for post-conviction relief pro se. In it, he claimed that he received ineffective assistance of counsel (IAC). Wilkes requested appointment of counsel on November 3, 2011, and on March 2, 2012, the Montana Innocence Project filed a notice of appearance to represent him. Following several continuances and an uncontested motion to amend Wilkes's petition, an amended petition for post-conviction relief was filed on September 5, 2012. In it Wilkes argued, supported by the testimony of several experts, that he should receive a new trial because he received IAC and because he had discovered new evidence warranting a new trial.

¶8 The State responded to the amended petition on May 3, 2013. Included with the response was an affidavit from Spencer. The State argued that Wilkes had not received IAC and that the evidence Wilkes presented did not warrant a new trial. Following a reply brief from Wilkes, the District Court decided that an evidentiary hearing was not necessary and that, based on the filings before it, Wilkes was not entitled to a new trial. It denied Wilkes's petition for post-conviction relief.

**STANDARDS OF REVIEW**

¶9 We review a district court's denial of a petition for post-conviction relief to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *Heath v. State*, 2009 MT 7, ¶ 13, 348 Mont. 361, 202 P.3d 118. We review discretionary rulings in post-conviction relief proceedings, including rulings related to whether to hold an evidentiary hearing, for an abuse of discretion. *Heath*, ¶ 13. We review de novo the mixed questions of law and fact presented by claims of IAC. *Heath*, ¶ 13.

**DISCUSSION**

¶10 *1. Did the District Court err by failing to adequately address Wilkes's claims for post-conviction relief?*

¶11 Wilkes claims that the District Court erred when it inadequately addressed his IAC and newly discovered evidence claims. We address the IAC claim at paragraphs 18 through 33, and address his newly discovered evidence claim below.

¶12 A district court must adequately address a petitioner's post-conviction relief claims before dismissing them. We have remanded cases and ordered district courts to make further findings and conclusions when the district courts have failed to address each post-conviction relief claim. *Heath*, ¶ 26; *Williams v. State*, 2002 MT 189, ¶¶ 24-28, 311 Mont. 108, 53 P.3d 864. We have also remanded cases for further proceedings where we were unable to determine from a district court's order the facts upon which the district court based its legal conclusions. *Beach v. State*, 2009 MT 398, ¶ 51, 353 Mont. 411, 220 P.3d 667.

5

¶13 The District Court failed to specifically address Wilkes's newly discovered evidence claim. The District Court made no specific conclusion regarding this claim. Rather, it described the evidence and then restated and summarized the parties' arguments without comment or analysis. The District Court did not even identify the legal standard required for a petitioner to succeed on a newly discovered evidence claim. Although this claim is related to and involves much of the same evidence as Wilkes's IAC claim, and although the District Court analyzed much of the evidence when considering Wilkes's IAC claim, this does not make its analysis adequate. Wilkes is entitled to have his newly discovered evidence claim independently considered, and the District Court erred when it did not do so. *Williams*, ¶ 27.

¶14 Regardless, the State argues that the District Court correctly denied Wilkes's newly discovered evidence claim and that we should affirm its decision. Wilkes also makes arguments on the merits of its newly discovered evidence claim. We have considered such arguments—arguments on the merits of an issue that we have decided a District Court inadequately addressed—as harmless error arguments. *See Kills On Top v. State*, 2000 MT 340, ¶¶ 17-18, 303 Mont. 164, 15 P.3d 422. While we construe the State's argument to be a harmless error argument here, we cannot conclude that the District Court's failure to adequately address Wilkes's newly discovered evidence claim was harmless.

¶15 While this case was pending on appeal and after briefing had ended, we decided *Marble v. State*, 2015 MT 242, ___ Mont. ___, ___ P.3d ____. In that decision, we clarified that this Court no longer applies either of the standards that the parties in this

6

case urge us to apply to Wilkes's newly discovered evidence claim. Specifically, we stated that neither the actual-innocence standard of the concurrence in *State v. Beach*, 2013 MT 130, 370 Mont. 163, 302 P.3d 47, nor the reasonable-probability-of-a-different-outcome standard of *State v. Clark*, 2005 MT 330, 330 Mont. 8, 125 P.3d 1099, provides the legal standard by which we judge newly discovered evidence claims that are made in timely filed petitions for post-conviction relief. *Marble*, ¶¶ 30-32. Instead, we decided that the standard is the one stated in § 46-21-102(2), MCA:

> We therefore conclude that a district court presented with a postconviction petition based upon newly discovered evidence shall utilize the very test set forth in § 46-21-102, MCA. It shall determine whether the "newly discovered evidence …, if proved and viewed in light of the evidence as a whole would establish that the petitioner did not engage in the criminal conduct" for which he or she was convicted.

*Marble*, ¶ 36 (quoting § 46-21-102(2), MCA). The District Court has not had the opportunity to address Wilkes's claim according to this standard, and we will not address the claim here. *See Marble*, ¶ 37. As such, we will not hold that the District Court's failure to adequately address Wilkes's claim was harmless.

¶16 For the foregoing reasons, we remand Wilkes's newly discovered evidence claim to the District Court. On remand, the District Court should independently consider and rule on Wilkes's newly discovered evidence claim, making written findings of fact and conclusions of law.

¶17 *2. Did the District Court err by denying Wilkes's IAC claim?*

¶18 Wilkes argues that Spencer rendered IAC and that the District Court erred by deciding otherwise. The State responds that the District Court correctly decided that

7

Wilkes's alleged acts or omissions did not constitute IAC because they were reasonable and not prejudicial. We disagree.

¶19 In his petition for post-conviction relief, Wilkes argued that Spencer rendered IAC by failing to adequately prepare for trial.[1] He contended that as a result of this inadequate preparation, Spencer made decisions and took positions at trial inconsistent with the goals and objectives Wilkes identified for his defense. To support this contention, Wilkes provided expert testimony and evidence that he claimed Spencer should have presented at trial. To be clear, Wilkes did not argue that Spencer rendered IAC merely by failing to present this particular evidence or evidence like it. Instead, Wilkes pointed to the evidence as proof that Spencer inadequately prepared for trial by failing to identify similar evidence and arguments and as proof that with adequate preparation Spencer could have conducted a defense consistent with Wilkes's goals and objectives.

¶20 The District Court decided that Spencer did not render IAC for two reasons. First, it decided that Spencer's decision not to challenge the AHT diagnosis was strategic and could not constitute IAC for this reason. Second, it decided that, considering the evidence Wilkes presented, even if Spencer had challenged Gabriel's diagnosis the result of the trial would have been the same. We cannot affirm the District Court's decision on either basis.

---

[1] He also argued that Spencer rendered IAC by failing to appeal his conviction. However, Wilkes does not mention the failure to appeal claim in his briefs to this Court, beyond an unsupported statement that Spencer failed to provide Wilkes with adequate representation "post-trial." As we will not conduct legal research or formulate arguments on a party's behalf, this statement is not enough to make the failure to appeal claim an issue on appeal and we will not consider it here. *See Riggs v. State*, 2011 MT 239, ¶ 7, 362 Mont. 140, 264 P.3d 693.

¶21 As an initial matter, the District Court did apply the correct standard of law for reviewing Wilkes's IAC claim. As the court noted, this Court has adopted the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), for assessing claims of IAC. *Heath*, ¶ 17. To bring a successful claim under this test, a petitioner must prove that acts or omissions of counsel were both unreasonable and prejudicial to the petitioner's defense. *Soriach v. State*, 2002 MT 187, ¶ 15, 311 Mont. 90, 53 P.3d 878. We will affirm a district court's decision to deny relief based on an IAC claim if the petitioner has failed to prove either prong of *Strickland*. *State v. Cobell*, 2004 MT 46, ¶ 15, 320 Mont. 122, 86 P.3d 20.

¶22 We cannot affirm the District Court's decision based on its conclusion that Spencer's decision not to challenge Gabriel's diagnosis was reasonable. The District Court decided that Spencer's decision was strategic and therefore entitled to a presumption of reasonableness. It then dismissed Wilkes's IAC claim in conclusory fashion.

¶23 While strategic decisions of counsel are entitled to a strong presumption of reasonableness, they are not immunized from IAC claims. Before affording strategic decisions a presumption of reasonableness, a reviewing court must consider whether the underlying strategy is reasonable. *Whitlow v. State*, 2008 MT 140, ¶¶ 17-19, 343 Mont. 90, 183 P.3d 861; *Soriach*, ¶ 22. The question when deciding whether an attorney's decision was reasonable "is not merely whether counsel's conduct flowed from strategic decisions and trial tactics but, rather, whether it was based on 'reasonable' or

9

'sound' professional judgment." *Whitlow*, ¶ 19. This is measured in light of the surrounding circumstances and the prevailing professional norms. *Whitlow*, ¶ 19.

¶24 The District Court erred when it concluded without explanation and without considering Spencer's underlying reasons, that Spencer's decisions regarding the evidence presented at trial were "strategic." The only real rationales the District Court provided for this decision were its conclusions that Spencer's obligation to prepare was discharged as soon as he consulted an expert that returned an AHT diagnosis and that "[e]vidently Mr. Spencer is doing something right" because the last five trials Spencer tried in the Fourth Judicial District resulted in an acquittal or a hung jury. We do not agree that consulting a single expert rendered Spencer's decision to not challenge the State's experts reasonable per se, nor do we agree that Spencer's record before the court in other cases entitled his actions to some presumption of reasonableness. More importantly, neither reason the District Court provided measures the reasonableness of Spencer's decision in light of the circumstances of Wilkes's case. For these reasons, we conclude the District Court erred by determining, on this record, that Spencer's actions were reasonable and did not constitute IAC. We cannot affirm its decision on this basis.

¶25 We also cannot affirm the District Court's decision based on its conclusion that Spencer's decision not to challenge Gabriel's diagnosis did not prejudice Wilkes's defense. The court examined the expert evidence Wilkes presented in his petition and decided that challenging Gabriel's AHT diagnosis would not have presented a reasonable probability of resulting in a different outcome. We likewise conclude the District Court erred in making this determination on this record.

10

¶26 The District Court relied on our decision in *Elliott v. State*, 2005 MT 10, 325 Mont. 345, 106 P.3d 517, to justify its decision. In *Elliott*, the petitioner argued that her counsels' failure to secure an expert that would testify in support of her defense prejudiced her. *Elliott*, ¶ 10. We disagreed because she "failed to establish that an expert could be found who would testify affirmatively about her defense theory." *Elliott*, ¶ 10. We reasoned that her assertions that an expert could be found and that such an expert's testimony would have changed the result of her trial were based on "mere speculation." *Elliott*, ¶ 10.

¶27 The District Court's reliance on *Elliott* was misplaced. We recognize that, similar to the petitioner in *Elliott*, Wilkes suggests that Spencer should have presented expert testimony to challenge the State's experts and theories. Unlike in *Elliott*, however, Wilkes does not merely speculate that such an expert exists or that the expert would testify persuasively to an alternate diagnosis; Wilkes specifically identified multiple experts that Spencer could have called at trial and provided the court with their written opinions. There was no need for the court to speculate about whether expert testimony was available, what the testimony would contain, or what impact such testimony would have. For these reasons, the District Court was incorrect to rely on *Elliott* as authority for its decision that Wilkes was not prejudiced by Spencer's actions.

¶28 Moreover, it was incorrect to decide that Wilkes's expert evidence did not indicate that he was prejudiced by Spencer's actions. The District Court seemed to incorrectly assume that to prove prejudice Wilkes was required to present expert testimony that would have definitively shown that AHT is a medically unacceptable diagnosis in all

11

situations or otherwise have definitively proven Wilkes's innocence. This was an improperly high standard.

¶29 To prove that he or she has been prejudiced, a petitioner is not required to show that but for the attorney's actions the results of his or her trial would have been different. Instead, prejudice is sufficiently proven if the petitioner is able to show that absent his or her attorney's actions there was a *reasonable probability* that the result of his or her trial would have been different. *Soriach*, ¶ 15.

¶30 Here, Wilkes was convicted of deliberate homicide. At trial, therefore, the State was required to prove and the jury required to find that Wilkes was guilty "beyond a reasonable doubt." *See State v. Price*, 2002 MT 284, ¶ 33, 312 Mont. 458, 59 P.3d 1122. The trial would have resulted in a different outcome if Wilkes had been able to establish reasonable doubt as to any element of the offense. To do so, Wilkes did not need to definitively prove, as the District Court seemed to assume, that Spencer could have proven AHT to be a medically unacceptable diagnosis under all circumstances or that Gabriel's death was caused by something other than AHT. Instead, it would have been enough for Wilkes to show that there was a reasonable probability that if Spencer adequately prepared and engaged the experts Wilkes presents he would have been able to raise a reasonable doubt as to his guilt. *See Soriach*, ¶ 15.

¶31 Wilkes may very well have done so, and the District Court's conclusion otherwise is based on a misapprehension of the effect of Wilkes's evidence. Wilkes presented evidence from experts that he claims Spencer could have and should have consulted. This evidence presents several alternate explanations for Gabriel's death besides AHT,

12

and Wilkes's experts state that these explanations were just as likely or more likely the causes of Gabriel's death than AHT. The evidence also challenges the medical validity of an AHT diagnosis under any circumstances.

¶32 We are not able to say whether the evidence does, in fact, raise a reasonable probability of reasonable doubt as to Wilkes's innocence, given the state of the record and the insufficiency of the District Court's analysis. But, nor are we able to agree with the District Court that the evidence does not indicate such reasonable probability of reasonable doubt, or correspondingly, that Spencer's actions prejudiced Wilkes. The District Court dismissed Wilkes's claim because it decided that Wilkes's evidence was conflicting and equivocal and therefore inadequate to definitively prove that AHT was a medically unacceptable diagnosis or that Wilkes was innocent. By doing so, the District Court misapprehended the effect of Wilkes's evidence and erred by holding Wilkes to a standard that was improperly high.

¶33 We reverse the decision of the District Court. We do not, however, decide that its ultimate conclusion was incorrect. On remand, the District Court should reconsider Wilkes's evidence in light of the standard specified in this Opinion, and it should make written findings of fact and conclusions of law.

¶34 *3. Did the District Court abuse its discretion by denying Wilkes's post-conviction relief claims before conducting a hearing?*

¶35 A district court is not required in all circumstances to hold an evidentiary hearing on a petition for post-conviction relief. *Heath*, ¶ 21. According to § 46-21-201(1)(a), MCA, a district court has the discretion, following a responsive pleading, to dismiss a

13

petition for post-conviction relief based solely upon the files and records of the case. *See Heath*, ¶ 16; *Griffin v. State*, 2003 MT 267, ¶ 12, 317 Mont. 457, 77 P.3d 545. Wilkes argues that the District Court abused this discretion when it failed to hold an evidentiary hearing before ruling on his claims for post-conviction relief. He asks this Court to order the District Court to conduct an evidentiary hearing on remand. We decline to do so.

¶36 Based on our discussion of the foregoing issues, we have decided to reverse and remand, ordering the District Court to reconsider Wilkes's newly discovered evidence and IAC claims in light of the standards we have identified. The District Court applied different standards in its order and, as such, it has not yet decided whether an evidentiary hearing will be required for it to properly dispose of Wilkes's claims based on the standards we have specified. Although a hearing may be necessary for the District Court to properly dispose of Wilkes's claims, the decision to hold a hearing is left to the discretion of the District Court. We will not prematurely dictate—before the District Court has had the opportunity to exercise its discretion—that failing to hold a hearing on remand would be an abuse of discretion.

## CONCLUSION

¶37 The District Court inadequately addressed Wilkes's newly discovered evidence claim. This error was not harmless. The District Court erred when it denied Wilkes's IAC claim. It misapplied the law and misapprehended the effect of Wilkes's evidence. For these reasons, we reverse and remand for proceedings consistent with this Opinion.

/S/ MICHAEL E WHEAT

14

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JIM RICE

Justice Jim Rice, concurring.

¶38    I concur with the Court's determination to reverse the judgment, and to remand for the District Court's application of the *Marble* standard.  Opinion, ¶¶ 15-16, 36.  Here, unlike in *Marble*, the District Court did not conduct a hearing and enter findings of fact from the evidence, to which we could apply the new standard.  Thus, while I believe this Court's application of the new standard would have been appropriate in *Marble*, I agree that remand is necessary here.


/S/ JIM RICE


Justice Laurie McKinnon, dissenting.

¶39    The Court errs in concluding that the District Court did not adequately address Wilkes' IAC claim.  Wilkes alleges that he received ineffective assistance of trial counsel when his attorney failed to present information to the jury regarding disagreement in the medical community about SBS; argued at closing that Wilkes was, at most, guilty of negligent homicide; and failed to locate experts who would testify that there were natural causes for Gabriel's death.   The District Court, after applying the correct standard pursuant to *Strickland*, determined that there was no "reasonable probability" the result of the proceedings would have been different.  Having conducted a detailed analysis of the

15

expert affidavits filed by Wilkes, and after evaluating the affidavits in the context of evidence produced at trial, the District Court issued a 27-page order denying the petition. Judge McLean's conclusion was based upon the evidence presented during an eight-day jury trial, including nine expert witnesses, over which he presided; nearly 300 pages of legal argument, affidavits, and exhibits presented during postconviction proceedings; a comprehensive review of the expert witness reports filed by Wilkes; and the affidavits of Wilkes's trial counsel.

¶40 No one disputes that Wilkes's post-trial expert witnesses presented alternative explanations for Gabriel's death or that AHT was an imprecise or simplistic diagnosis. The evidence produced at trial, however, overwhelmingly demonstrated that the severity, degree, and kind of injuries that Gabriel suffered could only have been produced by some form of trauma. Gabriel had a documented history of numerous visits with the pediatrician and for well-child checkups, all of which confirmed he was a healthy, thriving infant prior to his injury. Concerns related to NH were never observed by the health care providers or noted in medical records. The jury heard this evidence and considered the demeanor and credibility of the State's witnesses, Wilkes's credibility, the bruising on Gabriel's back, the presence of older hematomas, the circumstances surrounding the evening, and the babysitter's testimony. The State's experts testified that after ruling out infections, disease, neurological deficits, aspiration of vomit, and other non-traumatic causes, the only conclusion that could be made based upon a rotational-type injury, severe retinal hemorrhaging, massive subdural hemorrhaging, and

16

cortical venous thrombosis was that Gabriel's injury occurred as a result of a violent trauma.

¶41 The Court fails to appreciate that, in the context of this overwhelming evidence of trauma, the District Court correctly concluded that the "waffling" of Wilkes's expert witness, Dr. Peter Stephens, who opined that Gabriel may have suffered from NH rather than a from a violent trauma, would not have a reasonable probability of changing the outcome. Significantly, Dr. Stephens could not state that either chronic subdural hematoma or cortical venous thrombosis, which he identified as possible causes of Gabriel's death, could be caused by NH. The best that Dr. Stephens could do was to testify that NH "may" have played a part in Gabriel's death. Wilkes concedes that there is general agreement that violently shaking a baby could cause serious injury or death.

¶42 The affidavits of trial counsel established that the attorney assigned to represent Wilkes in a pending dependency and neglect proceeding contacted Scott Spencer, a criminal attorney, when Gabriel was first injured, suspecting that a criminal attorney may be needed. The matter was immediately staffed with the Regional Public Defender and the decision was made to retain Dr. Bennett to examine Gabriel in Spokane while Gabriel was still alive. Dr. Bennett concluded that Gabriel's brain injury was a non-accidental rotational-type brain injury that would have become almost immediately symptomatic, and that Gabriel would not have been able to drink from a bottle as he had done with the babysitter. Dr. Bennett agreed with the State's experts that Gabriel suffered an abusive head trauma. Trial counsel's affidavits also established that they knew of theories

17

challenging SBS and explored two theories involving rare diseases, but chose not to present these theories because they believed they would invariably fail.

¶43    The Court also errs when it concludes that the District Court failed to specifically address Wilkes' newly discovered evidence claim.  As the District Court correctly observed, nothing Wilkes presented was "new," not even the expert opinion that Gabriel may have suffered from NH.  NH, although an extremely rare disease, was not unknown to the medical profession at the time of Wilkes' trial.  The conclusion made by the District Court that the evidence was not new, required that it evaluate the entirety of Wilkes' claim as an IAC claim.  This is exactly what the District Court did.

¶44    In light of the foregoing, and upon review of the trial record and record in these proceedings, I would affirm the judgment of the District Court.  I further would conclude that the District Court did not abuse its discretion in making its decision without a hearing.  The record was well-documented and thorough.  Finally, to the extent the Court directs a different test be applied to newly discovered evidence than that set forth in *State v. Beach*, 2013 MT 130, 370 Mont. 163, 302 P.3d 47 (J. McKinnon concurring), I dissent for the reasons stated in my dissent in *Marble v. State*, 2015 MT 242, _____Mont. _____, _____ P. 3d _____.

                                        /S/ LAURIE McKINNON