DA 20-0259

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 220N

STATE OF MONTANA,

     Plaintiff and Appellee,

v.

DAVID JOSEPH CORD,

     Defendant and Appellant.

APPEAL FROM:    District Court of the Fifteenth Judicial District,
In and For the County of Roosevelt, Cause No. DC-18-37
Honorable David Cybulski, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     Ryan Aikin, Aikin Law Office, PLLC, Missoula, Montana

     For Appellee:

     Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
Attorney General, Helena, Montana

     Frank A. Piocos, Roosevelt County Attorney, Wolf Point, Montana

Submitted on Briefs:  September 21, 2022

Decided:  November 1, 2022

Filed:

                 _____
                           Clerk

FILED

11/01/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0259

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 David Joseph Cord (Cord) appeals his conviction and sentence for felony sexual assault, § 45-5-502, MCA, from the Montana Fifteenth District Court, Roosevelt County.

¶3 The following facts were elicited through witness testimony at trial. On September 21, 2018, around 3:00 a.m., Anthony Bowland (Anthony) woke up to banging on his door at his home in Culbertson and a "car racing off." He got out of bed and saw his wife, Brandy Bowland (Brandy), standing in the entryway after she had been out drinking with Cord and Cord's co-defendant, Dominic Moon (Moon). Anthony and Brandy were separated and had not lived together for over two years. Brandy lived with four of their six children, including H.B. Brandy was dating Jim Olson (Olson) at the time.

¶4 Olson was staying at Brandy's house after he had fallen asleep in her bedroom around 10:00 p.m. Olson woke up and heard the door open between 2:30 a.m. and 3:00 a.m. He assumed it was Brandy entering the house. He waited for Brandy to come into the bedroom, but instead he saw Cord and Moon attempting to walk into the bedroom. After seeing Olson in the bed, Cord and Moon retreated and stood in the hallway "whispering" to each other. Olson got out of bed to confront them and told them to leave because children were in the house, and they had school in the morning. Cord and Moon

2

finally left the house five to ten minutes later and drove away in Brandy's car. Olson was upset that Brandy was still not home, so he left Brandy's house to go to his own home after she did not answer his phone calls.

¶5 Ten minutes after Olson left Brandy's house, he returned because he had left his work boots. Upon returning, Olson noticed that Cord and Moon were back at Brandy's house. Olson saw H.B. sitting in the living room awake with Cord and Moon. H.B. testified that she was "woken up by [the] arguing" between Olson, Cord, and Moon. H.B. left the couch and moved upstairs to Brandy's bedroom since Olson had left and no one else was in her mother's bedroom. Olson retrieved his boots and left for a second time.

¶6 After H.B. went upstairs to sleep, she heard footsteps and assumed it was her mother walking upstairs to go to bed. However, Cord and Moon entered Brandy's bedroom where H.B. was trying to sleep, and Cord jumped on top of H.B. while Moon held her arms down and bit her neck. H.B. cried and told Cord and Moon to "get off me." She told Cord to stop, but Cord put his arm in her mouth so nobody in the house could hear her yell. Moon did not touch any of H.B's intimate body parts and walked away to the end of the bed, where he sat. H.B. testified that it hurt, and she was in pain when Cord touched and penetrated her vagina with his penis. She affirmed that she never pursued or wanted a romantic relationship with Cord.

¶7 In the meantime, Anthony had driven Brandy to her house and arrived after Olson had left for the second time. When they went inside, they heard "wrestling" and "creaking" from upstairs. Brandy went upstairs to determine what the noise was and "hollered" loudly. Cord came running down the stairs "holding his erect penis in his hand." H.B. noted that

3

Cord and Moon ran out of the bedroom "very fast, they wanted to get out of there." Cord was naked from the waist down and had left his pants, underwear, and shoes in Brandy's bedroom. Anthony punched Cord in his head, and Cord hit Anthony in his face before Cord and Moon ran out the front door. After Cord and Moon left, Brandy and H.B. returned downstairs. Anthony immediately called the Roosevelt Sheriff's Department around 4:00 a.m.

¶8 A sergeant from the Sheriff's Department arrived on the scene at 5:00 a.m. to take Anthony's statement. The sergeant did not take a statement from H.B. or transport her to the hospital for an examination. He also did not collect evidence or take photographs of the scene. The sergeant testified that H.B. was "reserved and quiet" and occasionally giggled with her sister while he interviewed Anthony. Roosevelt County Sherriff's Deputy Patrick O'Connor interviewed Cord and Moon about the incident on two separate occasions—Cord on November 5, 2018, and December 19, 2018, and Moon on September 27, 2018, and December 19, 2018.

¶9 The State charged Cord with Sexual Intercourse Without Consent (SIWC), a felony, in violation of § 45-5-503, MCA, and, alternatively, with Attempted SIWC (Count I). The State also charged Cord with Sexual Assault, a felony, in violation of § 45-5-502(1), MCA (Count II). The Information recited a "Penalty" provision for both counts.[1] The Penalty for Count II provided:

---

[1] We will not address the Penalty recited for Count I because Cord was acquitted on the SIWC charge.

4

Count II: Pursuant to § 45-5-502(3), if the victim is less than 16 years old and the offender is 3 or more years older than the victim or if the offender inflicts bodily injury upon anyone in the course of committing sexual intercourse without consent, the offender shall be punished by life imprisonment or by imprisonment in the state prison for a term not less than 4 years or more than 100 years and may be fined not more than $50,000.

The District Court conducted a jury trial and consolidated Cord's trial with Moon's trial based on the State's allegation that Moon was an accomplice to Cord's SIWC charge.

¶10   At trial, neither Cord nor Moon testified.  Nonetheless, the State called Deputy O'Connor as a witness and provided him with transcripts of the defendants' interviews.  On direct examination, the State read excerpts from the transcripts of the interviews into evidence and asked Deputy O'Connor if he had read each statement correctly.  Cord and Moon objected to the State reading the transcripts and the State responded that the transcripts showed alleged "inconsistencies" between the two defendants' interviews.  The District Court allowed the direct examination to continue.[2]  Neither the transcripts of the interviews nor recordings of the interviews were entered into the trial record or played for the jury.

---

[2] From the trial transcript, nearly 40 pages are dedicated to the State's use of the interviews during its direct examination of Deputy O'Connor.  As an example, the State asks Deputy O'Connor (In this excerpt, Cord is referred to as "D.C." and Deputy O'Connor is referred to as "P.O."):

> Q     Now let's go to Joey Cords [sic] second interview.  So again, this is the second interview which took place on December 19, 2019.  We will go to page 19, lines 9 through 15 and then lines 27 through 28 onto page 20, lines 1 through 4.  So, page 19, line 9: P.O., "Alright in describing the lighting in the room, was pitch black or could you guys see each other" D.C., "Yeah." P.O., "Were the lights on?" D.C., "The lights were on." P.O., "The lights were on when you guys were in there?" D.C., "MMhhh."  Deputy O'Connor did I read that one correctly?
> A     Yes.

¶11 The record, however, demonstrates the interviews contained a significant number of exculpatory statements. Cord and Moon both indicated that H.B. invited them inside the house and that she "pulled" them upstairs. Moon told Deputy O'Connor that he was "so intoxicated" from drinking with Brandy earlier that evening that he could not remember the details of what happened between H.B. and Cord. Cord expressly denied having sexual intercourse with H.B. in the interview. Moon told Deputy O'Connor that he knew "nobody raped [H.B.]" and that when Brandy got home, H.B. said "Oh, somebody is here." In the interview, Cord said Brandy had been trying to get H.B. and him together for months. Both Cord and Moon told Deputy O'Connor that H.B. and her mother had said H.B. was 16 years old and nearly 17. Moon said he had seen H.B. drinking and smoking cigarettes with her mother and that he did not think Brandy would allow this if H.B. were only 15 years old. Finally, Cord told Deputy O'Connor that at the time of the interview, he knew H.B. was 15, but at the time of the incident he thought H.B. was 16. Both Cord and Moon were 24 years old at the time of the incident. Deputy O'Connor stated at trial that Cord was born in 1994 and confirmed that H.B. was born in 2002.

¶12 The District Court provided the following verdict form, set forth in its entirety, to the jury:

1. Did the State prove beyond a reasonable doubt that David Cord had sexual intercourse with H.B. without consent?
YES ___        NO___

If you answered Yes, your verdict is Guilty.
If you answered No, please proceed to question 2.

2. Did the State prove beyond a reasonable doubt that David Cord committed the crime of "attempted" sexual intercourse with H.B. without consent?

YES ___          NO___

If you answered Yes, your verdict is Guilty.
If you answered No, please proceed to question 2 [sic].

3. Did the State prove beyond a reasonable doubt that David Cord had sexual contact with H.B. without her consent?

YES ___          NO___

The sexual assault charge thus omitted language at the bottom of the instruction—"If you answered Yes, your verdict is guilty."

¶13　The jury acquitted Cord of SIWC but determined that Cord "had sexual contact with H.B. without her consent" in accordance with the third question on the verdict form. Moon was acquitted of all charges.

¶14　Cord filed a Motion for a New Trial on October 10, 2019, and attached an affidavit from his attorney, Terrance Toavs, attesting that a juror had informed Toavs that the jury had requested from the bailiff that they be allowed to review the transcripts of the defendants' police interviews, but that the District Court declined to answer their request. In his motion, Cord argued the District Court erred in denying the jury's request without informing counsel. Moreover, Cord argued the District Court should have provided the transcripts to the jury because the State's method of presenting the evidence was very confusing. Cord argued he was prejudiced because the jury was clearly confused and had "misconstrued" the evidence. The State contended that Cord was attempting to introduce intrinsic juror information prohibited by M. R. Evid. 606 and that Cord never requested the

7

interview transcripts or recordings be entered into evidence or played for the jury. The District Court denied Cord's motion, reasoning:

> As far as the jury decision because jurors weren't provided a copy of the transcript. Transcripts generally aren't allowed, you're not allowed to emphasize some testimony otherwise and, generally, as a general rule, the Supreme Court frowns on letting transcripts into the jury room.

The District Court added, "The physical transcripts of the defendants' interviews were never entered into evidence by either party. As such, it would have been error for the Court to admit them and for the jury to refer to them during deliberations." In its Order denying Cord's motion for a new trial, the District Court held that the State's use of the interview transcripts during direct examination of Deputy O'Connor was permissible as prior inconsistent statements and statements by a party opponent. The District Court sentenced Cord to 40 years in prison, with 35 years suspended, and imposed a $50,000 fine.

¶15 Section 45-5-502, MCA, sets forth the offense of sexual assault and provides, in pertinent part:

> (1) A person who knowingly subjects another person to any sexual contact without consent commits the offense of sexual assault.
> (2) (a) On a first conviction for sexual assault, the offender shall be fined an amount not to exceed $500 or be imprisoned in the county jail for a term not to exceed 6 months, or both.
>
> .   .   .
>
> (3) If the victim is less than 16 years old and the offender is 3 or more years older than the victim or if the offender inflicts bodily injury upon anyone in the course of committing sexual assault, the offender shall be punished by life imprisonment or by imprisonment in the state prison for a term of not less than 4 years, unless the judge makes a written finding that there is good cause to impose a term of less than 4 years and imposes a term of less than 4 years, or more than 100 years and may be fined not more than $50,000.

8

¶16 On appeal, Cord makes several arguments. Cord did not preserve a claim for instructional error. However, we conclude the failure to instruct the jury fully and adequately on the age disparity required to convict under § 45-5-502(3), MCA, merits plain error review and is dispositive of the remaining alleged errors.

¶17 The plain error doctrine allows this Court to discretionally review claims not preserved at trial that implicate a criminal defendant's fundamental rights. *State v. George*, 2020 MT 56, ¶ 4, 399 Mont. 173, 459 P.3d 854. We invoke plain error review "on a case-by-case basis, according to narrow circumstances, and by considering the totality of the circumstances." *State v. Williams*, 2015 MT 247, ¶ 16, 380 Mont. 445, 358 P.3d 127. We may review and correct an unpreserved assertion of error based upon a showing of: (1) a plain or obvious error; (2) that affected a constitutional or other substantial right; and (3) which prejudicially affected the fundamental fairness or integrity of the proceeding. *State v. Abel*, 2021 MT 293, ¶ 4, 406 Mont. 250, 498 P.3d 199. For example, "[i]f a defendant had the opportunity to object to a jury instruction at trial but failed to do so, we will ordinarily not examine the issue unless it qualifies for plain error review." *State v. Birthmark*, 2013 MT 86, ¶ 11, 369 Mont. 413, 300 P.3d 1140. The remedy following application of plain error review is reversal, in which this Court has the authority to "rectify a trial court judgment that . . . leaves unsettled the question of the fundamental fairness of the trial." *State v. Akers*, 2017 MT 311, ¶ 20, 389 Mont. 531, 408 P.3d 142.

¶18 We can review whether the jury was fully and fairly instructed under the plain error doctrine. "One of the fundamental principles of the criminal justice system is the requirement that the State prove each element of a charged offense beyond a reasonable

9

doubt." *State v. Price*, 2002 MT 284, ¶ 33, 312 Mont. 458, 59 P.3d 1122. In *State v. Ghostbear*, 2014 MT 192A, 376 Mont. 500, 338 P.3d 25, we held that the State was required to prove the parties' ages because age was one of the elements of the charged offense under § 45-5-502(3), MCA. Because the jury in *Ghostbear* had been instructed about the parties' age disparity, this Court held:

> Under the instructions as given, the jury's verdict required the jury to find the essential elements of sexual assault as charged in this case. Under the instructions as given, the jury could not have returned the conviction without determining as a matter of fact that the victim was under the age of 14 and that Ghostbear was more than 3 years older. By following the instructions and by returning a guilty verdict the jury necessarily found as facts the respective ages of Ghostbear and the victim. This constitutes felony sexual assault under § 45-5-502(3), MCA. The jury's verdict reflects a finding of the age disparity required by § 45-5-502(3), MCA.

*Ghostbear*, ¶ 14.

¶19    Indeed, the State concedes that the District Court erred when it failed to fully instruct the jury that age disparity was an element of the offense. Cord's constitutional rights of due process and a trial by jury were jeopardized when his conviction rested upon a determination by the jury that did not include all elements of the charged offense. *See United States v. Gaudin*, 515 U.S. 506, 510, 115 S. Ct. 2310 (1995) (holding that the constitutional guarantees to due process and a trial by jury "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt"). When a jury is not instructed on each element of the crime but nonetheless finds the defendant guilty of the crime charged, the fundamental fairness of the proceeding is necessarily undermined.

¶20　Moreover, we remain unconvinced that the jury instructions, considered *as a whole*, fully and fairly instructed the jury on the applicable laws of the case. *See State v. Kaarma*, 2017 MT 24, ¶ 7, 386 Mont. 243, 390 P.3d 609. Instructional error stems from the right to trial by jury, the right to have the State prove every element of the offense, and the presumption of innocence prior to conviction. *State v. Daniels*, 2019 MT 214, ¶ 32, 397 Mont. 204, 448 P.3d 511. When a district court commits a jury instructional error, it hinders the jury's ability to collectively consider the facts and circumstances in determining guilt or innocence. *City of Missoula v. Zerbst*, 2020 MT 108, ¶¶ 23, 30, 400 Mont. 46, 462 P.3d 1219. Here, the relevant instructions are:

Instruction 29

Sexual Assault
A person who knowingly subjects another to any sexual contact without consent commits the offense of sexual assault.

Instruction 31

Issues in Sexual Assault
　　　To convict the Defendant of sexual assault, the State must prove the following elements: 1. That the Defendant subjected H.B. to sexual contact; AND 2. That the sexual contact was without H.B.'s consent; AND 3. That the Defendant acted knowingly.
　　　If you find from your consideration of the evidence that all of these elements have been proved beyond a reasonable doubt, then you should find the defendant guilty.
　　　If on the other hand, you [sic] find from your consideration of the evidence that any of these elements has not been proved beyond a reasonable doubt then you should find the Defendant not guilty.

The only other relevant instructions were (1) Instruction 18, stating that H.B. was capable of consenting to sexual contact because she was at least 14; and (2) Instruction 19, providing that a person under 16 is incapable of consenting to sexual intercourse.

11

¶21 Importantly, while the State's theory of the case may have been that H.B. did not consent or agree to Cord's sexual contact–a misdemeanor under § 45-5-502(1), MCA— the State charged Cord and obtained a conviction under § 45-5-502(3), MCA, a felony, without the jury being instructed on age disparity—an additional element of the offense. In *Ghostbear*, the jury was properly instructed on each element of § 45-5-502(3), MCA, and, therefore, *Ghostbear* is distinguishable. Here, the jury was never instructed that age disparity was an element of the offense.

¶22 We conclude that the failure to instruct on an element of the offense was a plain or obvious error that affected Cord's constitutional right to due process and trial by jury and that the error prejudicially affected the fundamental fairness or integrity of Cord's trial. We exercise plain error review and reverse Cord's conviction for sexual assault.

¶23 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶24 Reversed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE